WAYNE TARTAGLIA *vs*. ROBERT TOWNSEND & another.[1]

Plymouth. March 7, 1985. — April 23, 1985.

Present: BROWN, CUTTER, & KASS, JJ.

*Libel and Slander.*

Even though a newspaper account of the circumstances in which a painting
of a former champion boxer was lent by the plaintiff to his cousin and
was subsequently repossessed by the plaintiff contained certain inaccurate
statements, the article as a whole was no more than an expression of
opinion based upon disclosed facts and thus was not actionable. [697-699]

CIVIL ACTION commenced in the Superior Court Department
on January 3, 1984.

The case was heard by *Augustus F. Wagner, Jr.*, J., on a
motion for summary judgment.

*Edward Gold* for the plaintiff.

*Carol J. Paquin* for the defendants.

CUTTER, J. This action for libel was brought in the Superior
Court on January 3, 1984, by Wayne Tartaglia (Wayne) be-
cause of the later of two articles by Townsend, published in
The Enterprise, a Brockton newspaper (newspaper). The arti-
cles appeared in a weekly boxing column called "Ringwise."
The first article (November 4, 1983) described a portrait of
the late pugilist "Rocky" Marciano, a former heavyweight
champion, held in great esteem in his native city, Brockton.
According to the article, a Brockton resident found the portrait
in his garage. Henry Tartaglia (usually referred to, in the article
and here, as "Hank") was described in the second article,
mentioned below, as "a well known Brockton businessman"
and the owner of a restaurant known as "Melio's" in Norton.

---

[1] Enterprise Publishing Company.

The finder of the portrait was said to have known that Hank (who is not a party to this litigation) greatly admired Marciano so he "gave the painting to Hank's cousin to pass along to him." The article said the painting was then "hanging in the lounge of Melio's . . . on the wall right next to a gigantic painting of the punch of the century, Rocky literally knocking Joe Walcott's head out of shape to capture the heavyweight championship of the world. Anyhow, Peter Marciano [younger brother of Rocky] . . . saw the painting and fell in love with it. So Hank hired [a] local artist . . . to paint a copy . . . and . . . Hank invited Peter over to his restaurant for dinner and presented it to him."[2]

The present action relates to the second article, published in the newspaper on December 23, 1983. That article recited much of the background mentioned in the earlier article. It then proceeded to identify Hank's cousin. "Henry's cousin, by the way, is Wayne Tartaglia, who works for the Brockton Water Dept. Hank chuckled the other day and said they call him 'Wicked Wayne.' " The later article then mentioned the dinner at Melio's at which the portrait copy was given by Hank to Peter Marciano and proceeded with the material set out in the margin.[3] The excerpts from the articles give a reasonable indication of their semi-jocular, informal tone.

The defendants filed a motion for summary judgment on the grounds that the statements complained of (a) were not defamatory as matter of law, but were matters of opinion based upon disclosed facts, and (b) were not published negligently. It was contended that there was no genuine dispute concerning any material fact.

Wayne filed an affidavit in response to this motion which took issue with both articles on certain background facts.

---

[2] Wayne, in a memorandum in answer to the two defendants' motion for summary judgment, mentioned below, concedes that the article of November 4, 1983, is not defamatory of him, but contends that, as background to a later article of December 23, 1983, it makes the later article "even more libelous than it is already."

[3] The statement read: "Well, maybe it was because he wasn't invited to the party. Maybe it was because his picture wasn't in the paper. Or his

Wayne asserted (a) that the painting had been given a number of years previously to him (Wayne) by a donor, who did not know Hank and who did not direct that it be given to Hank; (b) that the painting had not been found in a garage, but had been kept in Wayne's apartment, except for two occasions when, for a period of time, he had lent it to another, the second time to Hank Tartaglia at his request (but without giving him ownership); (c) that on the night when he removed the painting from Melio's, he had "walked into the restaurant" and had a conversation with Hank for a period of time; (d) that while he was there he conducted himself "in an appropriate and gentlemanly fashion," (e) that Hank "was fully informed of . . . [Wayne's] decision to take back the painting and consented" to that action[4]; and (f) that Dennis Frawley (see note 3, *supra*) was not present while he (Wayne) was in the restaurant.

Townsend filed an affidavit in support of his motion for summary judgment. This gave an account of the removal of the painting from the restaurant, based on interviews by Townsend with Dennis Frawley and with a barmaid at the restaurant. The affidavit stated that the affiant did not feel it necessary to talk to Wayne because he had confidence in two of his informants and "especially since neither Hank . . . nor anyone else" had suggested that Wayne had "acted unlawfully in repossessing the painting."

---

name. But later that Friday night, the very night the story was in the paper, Wayne Tartaglia — *Wicked Wayne* of the Water Dept. — *burst into the eating place*, took the original off the wall and left the restaurant with it.

"So Hank . . . who had a copy of the portrait painted and gave it to Peter Marciano, was left with no painting at all.

"Dennis Frawley, who witnessed the repossession of the painting by Wayne . . . summed the situation up by paraphrasing Leo Derocher [*sic*], 'All-around nice guys, all around, finish last,' he said" (emphasis supplied).

[4] Wayne's affidavit further set out that people did not call him "Wicked Wayne" before the article of December 23, 1983; that thereafter he has received numerous calls from people making fun of the name and comments about the article from fellow workers; that his parents have been upset by the story; that his "life has been greatly disrupted" by the article; and that neither "Townsend [n]or anyone from the" newspaper had been in touch with him to obtain his "version of the story."

A Superior Court judge entered summary judgment for the defendants without stating the grounds for his action. Wayne has appealed.

1. There is no reasonable suggestion in this record that Wayne is a public figure. Although Wayne apparently was an employee of the Brockton Water Department, the articles in the newspaper had no relation to his performance in his employment. He also cannot be regarded as a "public official" for purposes of this case. Accordingly, we treat most of the principles of *New York Times* v. *Sullivan*, 376 U.S. 254 (1964), as not here applicable. See *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 862-867 (1975).

2. The common law rule in Massachusetts is that "[w]ords may be found to be defamatory if they hold the plaintiff up to contempt, hatred, scorn, or ridicule or tend to impair his standing in the community," at least to his discredit "in the minds of a considerable and respectable class of the community." *Grande & Son* v. *Chace*, 333 Mass. 166, 168 (1955). This broad statement, for reasons discussed carefully in Restatement (Second) of Torts § 566 (1981) requires some modification in the light of recent decisions. Statements reasonably susceptible of being regarded as statements of opinion must be examined in their "totality in the context in which . . . published." See *Cole* v. *Westinghouse Broadcasting Co.*, 386 Mass. 303, 309, cert. denied, 459 U.S. 1037 (1982); *Fleming* v. *Benzaquin*, 390 Mass. 175, 180-187 (1983), which (at 186-187) discusses the considerable modifications of the law of defamation "beginning perhaps with *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323 (1974)," and the changed rules approved in Restatement (Second) of Torts, *supra*, § 566. On the authority of these cases, we examine Wayne's claims to determine whether the articles, in context, reasonably can be said to be more than expressions of opinion (even if neither profound nor seriously stated) and to impute to Wayne as a fact wrongful or reprehensible conduct of the type which the recent decisions still treat as actionable.

The articles certainly do not suggest that Wayne has engaged in any significant misconduct. Nevertheless, on the basis of Wayne's affidavit, the articles must be regarded as in various

respects inaccurate and to have caused Wayne (and perhaps other members of his family) distress and exposed him to some ridicule. Nonactionable statements of opinion may cause pain to the subject of them even if "written, not for serious effect, but to sting and [to] be quickly forgotten." It is likely that for "the victim of ridicule, the forgetting may not be easy." See *Myers* v. *Boston Magazine Co.*, 380 Mass. 336, 344-345 (1980), essentially (at 342) adopting the view expressed in the earlier dissenting opinion in this court (7 Mass. App. Ct. 676, 681-683 [1979]). The character and context of the comments, under the recent decisions, appear to determine whether (upon particular facts) defendants are subject to liability for defamation.[5]

3. There is no perceptible defamatory aspect in the erroneous statement that the painting was found in Wayne's garage, even if in Brockton that may be regarded as an inappropriate spot for a picture of a local hero. The quotation of Hank referring to "Wicked Wayne" does not suggest any wickedness in fact, particularly as Hank is described as having "chuckled," as he said it. The columnist, in attributing incorrectly such a nickname to Wayne, if he thought about it, could not have expected his action to please Wayne but, in view of the tone of the article as a whole, we regard the statement as mischievous rather than defamatory.

The inaccurate statement that Wayne "gave" the painting to Hank, when it must be taken (on Wayne's affidavit) to have been a loan, seems the most significant approach to defamation in the article, at least when coupled with the statement that

---

[5] Of course, part of the context of alleged defamatory comments may be whether their author and publisher acted reasonably, upon having cause to know that the comments, disclosed as the basis of an opinion, have caused significant distress to a subject of the comments. Efforts to ascertain and correct any inaccuracies in stating the basis for the comments, (with publicity comparable to that given to the original comments) will not make the comments less defamatory, but the efforts may shed some light on whether the inaccuracies (even if they do not make the defendants subject to liability) were intentional or inadvertent. Unhappily, this record reveals no attempt by the defendants to reduce Wayne's sense of injury by any public correction of the articles.

Wayne "burst" into Melio's and took the picture. The tongue-in-cheek tone of the article, describing an event involving apparently friendly cousins, makes it highly improbable that even readers of a column on boxing matters could regard the language as a charge of theft. Particularly is this so in view of the word "repossession" in describing the event. At most it could be thought to be a suggestion that Wayne was taking back a previous act of intra-family generosity somewhat petulantly, abruptly, and with impatience. Of course, on Wayne's affidavit, it here must be taken as having been done with moderation and with Hank's consent. The basic inaccuracies, however, in context do not appear significant nor do they indicate any hostility or animosity by the author toward Wayne.

We recognize that in *Smith* v. *Suburban Restaurants, Inc.*, 374 Mass. 528, 530 (1978), it was said, "If a publication is susceptible of both defamatory and harmless meanings, it presents a question for the trier of fact and cannot be ruled non-libellous as matter of law . . . . Inferences which might be drawn by a considerable and respectable segment of the community can make a publication actionable . . . . Words may be actionable even if they do not tend to damage a plaintiff's reputation or hold him up to ridicule in the community at large or among all reasonable people; it is enough to do so among a considerable and respectable class of people." With these statements, we must compare the *Fleming* case, 390 Mass. at 188. There it was said that the then defendant would "not be liable . . . for . . . [an] expression of opinion on disclosed facts even if the facts are false." Townsend, in the present case, cannot reasonably be regarded as making any "assertion of the existence of other, defamatory, facts that would justify the forming of" his general opinion that Hank (obviously thought by Townsend to be a nice person) had come out badly in the situation. *Id.* at 188. Any defamatory tendency of the Townsend articles, viewed as a whole, was somewhat amorphous, see *National Assn. of Govt. Employees, Inc.* v. *Central Broadcasting Corp.*, 379 Mass. 220, 228-230 (1979), rather than specific and significant. Compare *Sharratt* v. *Housing Innovations, Inc.*, 365 Mass. 141, 144-145 (1974). We con-

clude that the total effect of the second article was essentially a concurring opinion (as Townsend said in paraphrase) with the view of Leo Durocher (if he was the originator) that "nice guys . . . finish last."[6]

In view of our conclusion that the second article as a whole was an expression of opinion, we need not consider whether Townsend was negligent in not verifying his facts with Wayne, although he obviously had time to do so. Compare *Schrottman* v. *Barnicle*, 386 Mass. 627, 638-642 (1982).

No party is to have costs of this appeal (see note 5, *supra*).

*Judgment affirmed.*

---

[6] The *Myers* case, 380 Mass. at 338 et seq., and the *Fleming* case, 390 Mass. at 180 et seq., deal with expressions of opinion in the media, where First Amendment questions may be relevant. See the *National Assn. of Govt. Employees, Inc.* case, 379 Mass. 220, 227 et seq., and *Schrottman* v. *Barnicle*, 386 Mass. 627, 634 et seq. (1982). This circumstance makes restraint appropriate in viewing as defamatory statements which may be expressions of opinion.