Fremont-Smith, J.
Plaintiff Delise Battenfield (Battenfield) and her husband, Norris E. Dickard, bring this action against Battenfield’s former employer, Harvard University, and three of her former colleagues, alleging that she was harassed sexually and emotionally in the work place. Plaintiffs’ complaint alleges eighteen counts: violation of G.L.c. 151B (Counts I and III); assault and battery (Count II); defamation (Count IV); violation of the State Equal Rights Act, G.L.c. 93, §103(a) (Count V); violation of article 114 of the Massachusetts Constitution (Count VI); violation of the Massachusetts Civil Rights Act, G.L.c. 12, §§11H, 111 (Count VII); negligent supervision (Count VIII); invasion of privacy (Count IX); theft (Count X); negligent misrepresentation (Count XI); breach of fiduciary duty (Count XII); breach of contract and breach of the implied covenant of good faith and fair dealing (Count XIII); tortious interference with advantageous relations (Count XTV); intentional infliction of emotional distress (Count XV); negligent infliction of emotional distress (Count XVI); promissory estoppel (Count XVII); and, loss of consortium (Count XVIII).
In a joint motion, the defendants now move for summary judgment, pursuant to Mass.R.Civ.P. 56, on all counts. For the following reasons, the defendants’ motion is allowed in part and denied in part.
BACKGROUND
Based on the pleadings, affidavits, and exhibits submitted in conjunction with defendants’ motion for summary judgment, the undisputed facts are as follows.[3] On September 16, 1987, Battenfield was hired as Assistant to the Director of the Master of Liberal Arts (A.L.M.) program at the Extension School of Harvard University. Battenfield’s supervisor was Assistant Dean Dodge Fernald (Femald), the Director of the A.L.M. program. Defendants Donald Ostrowski (Os-trowski) and Sue Weaver Schopf (Schopf) were research advisors in the A.L.M. program. Defendant Dean Michael Shinagel (Shinagel) was the Dean of the Extension School and Fernald’s supervisor. In 1989, Battenfield was promoted to the position of Assistant Director of the A.L.M. program, with an accompanying increase in salary. Femald considered Battenfield’s work performance to be excellent, stating in an evaluation on April 26, 1991 that Battenfield “has been an outstanding member of the A.L.M. staff.”
In 1989, Battenfield was admitted to the A.L.M. program as a candidate for the degree of Master of Liberal Arts. Schopf became Battenfield’s research and thesis advisor.
During the subsequent period, Schopf communicated with Femald, Shinagel and Theresa Gee, the Extension School Personnel Officer, on several occasions regarding what she perceived as severe shortcomings and problems with Battenfield’s work and academic performance. In a nine-page letter to Theresa Gee, dated April 26, 1991, Schopf discussed Battenfield’s work habits and academic abilities in detail and described interpersonal difficulties she experienced at the office with Battenfield and Femald. On May 14, 1991, Shinagel held a staff meeting of the A.L.M. program employees, including Battenfield, at which Battenfield’s work performance was discussed. Both Schopf and Ostrowski expressed their dissatisfaction with Battenfield’s performance. Ostrowski allegedly remarked that “When I first started working here, I soon found out that I couldn’t get anything more than a yawn from Delise.”
After the meeting, Battenfield told Fernald that she was very upset because she believed that Ostrowski’s comment referred to and was in retaliation for Battenfield’s rejection of Ostrowski’s sexual advances. Battenfield then told Fernald that in the fall of 1988, Ostrowski said to her one day after having had lunch with her “I lust after you at night.” Shortly thereafter, on another occasion, Ostrowski allegedly came into Battenfield’s office and asked her “Will you sleep with me?" or “Are you going to have a sexual relationship with me?” Battenfield responded that she got along with him pretty well, that she enjoyed talking to him, but that she did not get involved with people at work as a rule. Ostrowski responded “Okay”, and then he kissed her and left her office. Sometime later, Os- *77 trowski came into Battenfield’s office and asked her “Have you decided whether or not you are going to go to bed with me?” Battenfield answered, “Absolutely not ... if you continue to ask me this, I’m going to report you.” Ostrowski kissed Battenfield again and left her office. From that time on, Ostrowski and Battenfield worked together without a further incident of this kind. Battenfield claims that she avoided Ostrowski.
After speaking with Femald, Battenfield reported the incidents to Shinagel: Shinagel responded to Battenfield that the allegations were a serious matter and if true, would constitute sexual harassment. Shinagel claims that he then alerted the university ombudsman, Dean John Adams (Adams). Battenfield spoke to Adams who suggested that she put her complaint in writing, which did not occur. No investigation of the complaint was ever conducted.
Harvard has a University Policy on Sexual Harassment which encourages individuals to report suspected cases of harassment “through the most comfortable of a variety of routes.” The policy states that “[w]hatever path chosen, University authorities will explore the allegations expeditiously and thoroughly, and will take appropriate corrective action as necessary.”
On May 21, 1991, Battenfield was admitted to the Stillman Infirmary for peptic ulcer disease and acute situational stress. During Battenfield’s initial hospital stay, Battenfield told Theresa Gee that she did not want to return to her position. Shinagel called Battenfield at the hospital and asked Battenfield to reconsider her decision; Battenfield responded that she did not see how she could continue to work in this situation. On another occasion, Battenfield told Femald that she did not want to return to work. Battenfield contends however that she never resigned and never intended to do so. She claims that she was “constructively discharged” from her position. Due to her medical condition, Battenfield has been on disability leave since May 21, 1991.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communication Corp., 410 Mass. 805, 809 (1991); Kowouvacilis v. General Motor Corp., 410 Mass. 706, 716 (1991). “If a moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion.” Pederson v. Time, Inc., 404 Mass. at 17.
1. Violation of G.L.c. 151B— Ostrowski — Count I
In Count I, Battenfield alleges that Ostrowski engaged in sexual discrimination and harassment in violation of G.L.c. 151B, §4(4A).
A complaint for unlawful discrimination in violation of G.L.c. 151B must be filed with the Massachusetts Commission Against Discrimination (MCAD) within six months of the alleged discrimination. G.L.c. 151B, §5. This six-month limitation will not be applied where “the unlawful conduct complained of is of a continuing nature.” 804 CMR §1.03(2). Lynn Teachers Union, Local 1037 v. MCAD, 406 Mass. 515, 520 (1990) (Lynn Teachers).
Battenfield’s claim of sexual harassment in violation of G.L.c. 151B rests on four alleged incidents of harassment. Battenfield testified in her deposition that in the fall of 1988 Ostrowski, at three separate times, made sexual propositions to her and twice he kissed her. The fourth incident occurred in May 1991 when Ostrowski commented at the staff meeting “I never got more than a yawn from Delise.” Because plaintiff did not file a claim with the MCAD until July 1991, over two years after the 1988 incidents, her claim of harassment with regard to the 1988 incidents is time barred. With regard to the 1991 incident, plaintiffs claim was timely filed. While evidence of the 1988 incidents may be admissible at trial for the purpose of proving plaintiffs state of mind and/or Ostrowski’s purpose or intent at the time the 1991 remark was made, plaintiff may not recover damages for the alleged 1988 incidents themselves because she did not comply with the six-month filing limitation.
To avoid this result, plaintiff argues that the four incidents viewed together constitute a continuing act of harassment which justifies the extension of the limitations period to include the 1988 incidents. The purpose of the continuing violation rule, however, is to permit the MCAD to “remedy ongoing discriminatory policies by an employer.” Lynn Teachers, 406 Mass, at 520. Plaintiff testified in her deposition, however, that no harassment occurred during the intervening period. The alleged incidents thus do not constitute an ongoing policy or continuing act of sexual harassment but rather four distinct (albeit possibly related) incidents of harassment. The fact that plaintiff understood Ostrowski’s “yawn” comment to be in reference to and in retaliation for her refusal of his earlier sexual advances does not mean that any harassment was continuous since 1988. It clearly was not, so that any tolling of the limitations period is not justified.
Defendant Ostrowski argues that plaintiffs remaining claim of sexual harassment based on the “yawn” comment he made at the staff meeting in May 1991, *78 should also be dismissed because it does not constitute sexual harassment as a matter of law. Sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature are unlawful under G.L.c. 151B when such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual’s work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment. G.L.c. 151B, §1(18). In evaluating a hostile work environment claim, a court will examine whether, from the point of view of a reasonable person in the plaintiffs position, the alleged misconduct was sufficiently pervasive to alter the conditions of her employment. See Gnerre v. MCAD, 402 Mass. 502, 507-08 (1988); College-Town, Division of Interco, Inc. v. MCAD, 400 Mass. 156, 162 (1988) (College-Town). Such a determination must be made on a case-by-case basis and, in this case, it is a question of fact to be determined at trial whether the alleged 1991 statements were intended or reasonably understood by plaintiff, in the context of any prior incidents, to constitute sexual references which rose to the level of illegal harassment. Summary judgment is therefore denied on Count I.
2.Assault and Batteiy — Count II
In Count II Battenfield alleges that by kissing her in the fall of 1988,[4] Ostrowski engaged in intentional, unauthorized physical contact constituting an assault and battery for which she seeks damages. Ostrowski argues that he is entitled to summary judgment on this count because plaintiff is unable to prove that he intended to cause her harm.
In a civil cause of action for assault and battery, the plaintiff must show that the defendant acted with the intent to cause a harmful or offensive contact or an imminent apprehension of such a contact. Waters v. Blackshear, 412 Mass. 589, 590-91 (1992), citing Restatement (Second) of Torts §13 (1965). The extent of the resulting harm need not be intended or foreseen. Id. at 591. Battenfield testified at her deposition that Ostrowski kissed her on two occasions in her office without her consent, that, prior to the incidents, Ostrowski had made several sexual propositions to the plaintiff, all of which she refused, and that she felt physically threatened by the kiss which she found to be very offensive and almost violent.
Plaintiffs uncontradicted testimony presents a genuine issue of material fact regarding defendant Ostrowski’s intent and plaintiffs state of mind. In cases where a party’s state of mind constitutes an essential element of the cause of action and where credibility of witnesses may be important, summary judgment is disfavored. Quincy Mutual Fire Insurance Co. v. Abernathy, 393 Mass. 81, 86 (1984). Because plaintiff has put forth sufficient evidence to support a claim that Ostrowski acted with the requisite intent and that the physical content was unauthorized by and offensive to plaintiff, and because the credibility of the parties is critical to a determination of liability on this count, summary judgment is inappropriate and denied on Count II.
3.Violation of G.L.c. 15IB — Harvard and Shinagle — Count III
In Count III, Battenfield alleges that Shinagel and Harvard aided and abetted the alleged sexual harassment and failed to investigate and respond to her complaints in violation of G.L.c. 151B.
An employer who is on notice of sexual harassment in the workplace, whether caused by supervisors, co-workers, or customers, and who fails to take adequate steps to remedy the situation, may be liable for sexual harassment under G.L.c. 15IB. See College-Town, 400 Mass, at 163-67 and n.5.
Harvard does not dispute plaintiffs testimony that after the May 14, 1991 meeting, plaintiff told Fernald and Shinagel about the alleged 1988 incidents and explained why Ostrowski’s comment at the meeting had upset her. Harvard was therefore on notice of the alleged harassment as of May 14, 1991. It appears from the various deposition testimony that Harvard took no further action after Battenfield reported the incident. Summary judgment on the claim against Harvard for failure to investigate the allegations is therefore inappropriate.
Shinagel, however, cannot be held personally liable for the alleged sexual harassment in the workplace. While Harvard is vicariously liable for the acts of its agents and employees, the same principle does not apply to another employee. Summary judgment on the claim against Shinagel individually for failure to investigate the allegations is therefore allowed.
4.Defamation — Count IV
Battenfield alleges in Count IV that Schopf, Os-trowski and Shinagel made defamatory statements about her for which she seeks damages. She also sues Harvard for vicarious liability. In her answers to interrogatories, Battenfield cites over one hundred alleged defamatory remarks. Upon review of these statements, the court finds that the remarks fall into two categories: expressions of opinion and privileged statements of fact. Because neither of these types of communications are actionable, Count IV shall be dismissed.
A statement is defamatory if it ”hold[s] the plaintiff up to contempt, hatred, ridicule, or scorn, or tends to impair his standing in the community.” Tartaglia v. Townsend, 19 Mass.App.Ct. 693, 696 (1985). Statements of opinion, however, as opposed to statements of fact, are not actionable. Id. at 697. Whether a statement is one of fact is a question of law to be determined by the court. Cole v. Westinghouse Broadcasting, Inc., 386 Mass. 303, 308-09 (1982), cert. denied, 459 U.S. 1037 (1982).
The Supreme Judicial Court has distinguished between non-actionable statements of opinion based upon facts fully disclosed to the recipient, and actionable statements of mixed opinion and fact, or of opin *79 ion implying the existence of undisclosed defamatory facts. Pritsker v. Brudnoy, 389 Mass. 776, 779 (1983). “A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as basis for the opinion ... A simple expression of opinion based on disclosed or assumed nondefamatory factsjs not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.” Lyons v. Globe Newspaper Co., 415 Mass. 258, 262 (1993).
To determine between actionable statements of fact, and nonactionable statements of opinion, the court must examine “the statement in its totality in the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement including the medium by which the statement is disseminated and the audience to which it is published." Id. at 263, quoting Cole, 386 Mass. at 309.
An otherwise defamatory communication, moreover, is protected by a conditional common law privilege “where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it.” See Bratt v. International Business Machines Corp., 392 Mass 508, 513 n.8 (1984) (Bratt), citing Sheehan v. Tobin, 326 Mass. 185, 190-91 (1950) (Sheehan). See Restatement (Second) of Torts, §§593-596. For example, “[a]n employer has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer’s legitimate interest in the fitness of an employee to perform his or her job.” Bratt, 392 Mass. at 509; McCone v. New England Tel. & Tel. Co., 393 Mass. 231, 235 (1984) (McCone). See also Sheehan, 326 Mass, at 191 (publication of union board meeting minutes which included defamatory statements concerning board member in monthly union publication was privileged because information was of general common interest to union membership); Restatement (Second) of Torts, §596, comment d.
The common law privilege is conditioned upon the manner in which the privilege is exercised. Sheehan, 326 Mass, at 192, citing Restatement (Second) of Torts, §599, comment a. A defendant can lose the privilege through “unnecessary, unreasonable, or excessive publication” or proof that the defendant acted recklessly. McCone, 393 Mass. at 236; Bratt, 392 Mass. at 515. On motion for summary judgment, however, the plaintiff bears the burden of establishing sufficient evidence of abuse of the conditional privilege. See Dexter’s Hearthside Restaurant, Inc. v. Whitehall Co., 24 Mass.App.Ct. 217, 223 (1987) (summary judgment awarded for defendant in defamation action where no evidence of malice or ulterior purpose).
Applying these principles, the court concludes that the statements challenged as defamatory in the present case are either expressions of opinion based on disclosed facts, privileged statements made in the course of evaluating her job performance, or a combination of the two.[5] The alleged defamatory statements made by Schopf, Ostrowski, and Shinagel concern either Battenfield’s performance at her job or her abilities or performance as a graduate student in the Extension School Masters program.
The statements were made in a variety of media, intra-office memos, orally between co-workers, orally at a staff meeting and written in the meeting minutes, but the remarks were published only to employees at the Extension School.
While it appears from the materials submitted in connection with defendants’ motion that there were severe interpersonal problems at the Extension School office, for purposes of defamation the statements made by defendants are fairly considered to be expressions of opinion regarding Battenfield’s abilities in reaction to the difficulties they were experiencing with her at the office. Statements as to whether a co-worker is incompetent, uncooperative and unproductive are expressions of opinion. Whether a person’s work product is considered satisfactory is also a matter of opinion. Such statements as “the slipshod way she does things,” “she couldn’t produce any term papers,” “Delise never did anything for us, beyond answering simple questions that could be answered on the spot without effort,” cannot reasonably be construed, for defamation purposes, as statements of fact. Similarly, Schopfs comments regarding Battenfield’s research abilities are statements of opinion based on disclosed facts.
Battenfield’s qualifications for the master’s program were, moreover, a proper subject of discussion by the persons whose duty it was to evaluate her. Schopf s statements regarding Battenfield's capacities as a masters student, such as “it was, in fact, the worst [thesisl proposal I received all year,” and “Delise had no idea how to do research," and Schopfs remarks on Battenfield’s transcript that her degree from another institution was of “zero significance,” were not only statements of opinion, subject to a difference of opinion and incapable of being proven false (see, e.g., Cole, 386 Mass, at 312 (statement that a reporter is “sloppy and irresponsible” is opinion and cannot be proven false)) but also privileged communications relating to the evaluation of her performance.
The court has gleaned only one statement from the many, which appears to be a statement of fact, capable of verification. Schopf remarked that “Delise had negative letters of recommendation in her personnel file.” This statement is, however, reasonably related to the legitimate business interest of ensuring the fitness of an employee for her job, and is therefore conditionally privileged. Battenfield has not presented specific facts upon which it could be found that the remark was made with a reckless disregard for the truth and therefore has not shown that the privilege was abused.
*80 Because the alleged statements constitute either statements of opinion or privileged statements, defendants’ motion for summary judgment with regard to Count IV shall be allowed.
5.Violation of the Massachusetts Equal Rights Act — Count V
The Massachusetts Equal Rights Act (MERA) became effective on October 31, 1991. G.L.c. 93, §102, All of the alleged incidents of sexual harassment giving rise to plaintiffs cause of action against Ostrowski (and Harvard vicariously) occurred prior to the passage of MERA. Because §102 confers new substantive rights, it does not operate retroactively. Hanscom v. Malden & Melrose Gas Light Co., 220 Mass. 1, 3 (1914); Fontaine v. Ebtec Corp., 415 Mass. 309, 318 (1993). See Butler v. RMS Technologies, Inc., 741 F.Supp. 1008, 1012-13 (D.Mass. 1990) (holding that G.L.c. 93, §102 does not apply retroactively). Therefore, CountV of plaintiffs complaint shall be dismissed.
6.Violation of Constitutional Rights — Count VI
The guarantees of the Massachusetts Declaration of Rights, Article 1 and Article 10, are directed solely towards limiting the actions of government. Because the defendants, Harvard, Ostrowski and Shinagel, are private parties, plaintiff has failed to state a claim for violation of her constitutional rights. See Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. 16, 21 (1983) (a college is a private institution).
7.Massachusetts Civil Rights Act — Count VII
To establish a claim under the Massachusetts Civil Rights Act (MCRA), G.L.c. 12, §111, Battenfield must prove that (1) her exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by “threats, intimidation, or coercion." See G.L.c. 12, §11H; Bally v. Northeastern University, 403 Mass. 713, 717 (1989) (Bally).
In Count VII, Battenfield claims that Shinagel and Harvard, vicariously, are liable under the MCRA for creating and/or condoning a hostile work environment, coercing plaintiff to abandon her rights to free speech, threatening to make it difficult for the plaintiff to obtain her Masters degree and coercing plaintiff to accept lower disability benefits than those to which she is entitled. Schopf, Battenfield claims, is also liable under the MCRA for creating a hostile environment and interfering with plaintiffs work.
Even assuming, without deciding, that these defendants have interfered with a “secured right” of the plaintiff (which is far from clear), Battenfield’s claim fails for lack of proof of “threats, intimidation, or coercion.” Battenfield has not supported her allegations with any evidence that Shinagel ever threatened to deny her a degree, reduce her benefits, interfere with her rights of free speech, or even to fire Battenfield. Further, Shinagel’s and Schopfs complaints and criticism regarding plaintiffs work performance do not constitute coercion within the meaning of this section. At most, the defendants’ criticism constituted a notice to Battenfield that her co-workers believed her work unsatisfactory. There is no evidence that Battenfield’s job was threatened due to her exercise of a secured right. See Conway v. Boston Edison Co., 745 F.Supp. 773 (D.Mass. 1990) (negative employment decision itself does not constitute coercion). Cf. Redgrave v. Boston Symphony Orchestra, 399 Mass. 93, 95 (1987) (violation of Act where cancellation of contract was used to coerce plaintiff not to exercise First Amendment rights).
Battenfield also claims that Ostrowski is liable under the MCRA for sexual harassment. Offensive sexual harassment with explicit physical contact by an employer who threatens the victim’s employment constitutes a violation of the MCRA. See O'Connell v. Chasdi, 400 Mass. 686, 687-88 (1987). However, where the alleged harasser is a co-worker, and overt threats are lacking, the same element of coercion is absent. While the conduct may be actionable under G.L.c. 151B, §4, or common law assault (see above), it does not constitute “threats, intimidation, or coercion” within the meaning of the MCRA.
B. Negligence and Negligent Supervision — Count VIII
In Count VIII, Battenfield alleges that Dean Shinagel negligently supervised Schopf and Battenfield suffered injury as a result. The Worker’s Compensation Act bars an employee injured in the course of her employment by the negligence of a fellow employee from recovering from the fellow employee if the fellow employee also was acting in the course of employment. Mendes v. Tin Kee NG, 400 Mass. 131 (1987). See G.L.c. 152, §§15, 24. Because the alleged acts of negligence occurred within the scope of employment, Battenfield’s claim is barred by the Worker’s Compensation Act.
9. Invasion of Privacy — Count IX
In Count IX, Battenfield alleges invasion of privacy against Schopf, Shinagel, and Harvard. The claim is based on four allegedly unlawful disclosures: (1) Harvard’s disclosure of Battenfield’s salary to her staff assistant: (2) Schopfs disclosure of Battenfield’s thesis proposal, as well as her opinion of Battenfield’s research skills, to Shinagel; (3) Harvard’s disclosure of Battenfield’s job description to Schopf; and (4) inspection of Battenfield’s papers and computer files while she was on sick leave.
Though not specifically pled as such, this count appears to be an action for public disclosure of private facts, pursuant to G.L.c. 214, §1B.[6] Chapter 214 proscribes “disclosure of facts about an individual that are of a highly personal or intimate nature where there exists no legitimate countervailing interests." Mulgrew v. Taunton, 410 Mass. 631, 637 (1991). The information allegedly disclosed (Battenfield’s salary, her thesis proposal and job description) are not of a “highly *81 personal or intimate nature,” and the very limited disclosure was reasonably related to the legitimate interest of ensuring Battenfield’s fitness for the job and the master’s program. Compare Mulgrew v. Taunton, 410 Mass, at 637 (no invasion of privacy when police chief disclosed, in response to city council inquiry, that plaintiff officer performed poorly, abused “sick days” and left the department in a “cloud of suspicion”); Hastings & Sons Publishing Co. v. City Treasurer of Lynn, 374 Mass. 812, 819 (1978) (disclosure of police payroll records did not violate § 1B) with Tower v. Hirshhorn, 397 Mass. 581, 588 (1986) (doctor violated §1B by divulging confidential medical information); Bratt v. International Business Machines Corp., 392 Mass 508, 524 (1984) (intra-corporate disclosure of plaintiffs medical diagnosis that he was paranoid could constitute a violation of IB). Further, Battenfield has little or no privacy interest in her work files, given that such information is property of her employer. Because plaintiff has not stated a claim for invasion of privacy, Count IX shall be dismissed.
10.Theft — Count X
A civil action for theft does not exist in Massachusetts. Battenfield’s allegations in Count X do not state a claim and Count X shall be dismissed.
11.Negligent Misrepresentation — Count XI
In Count XI, Battenfield alleges that defendants Shinagel, Schopf and Harvard made representations to plaintiff that later proved to be false: Shinagel allegedly represented that he would investigate her claim of sexual harassment against Ostrowski; Schopf allegedly promised to keep all communications concerning plaintiffs master’s thesis confidential; and, Harvard, by an agent, allegedly represented that plaintiff was only entitled to 70% of part-time pay as disability benefits.
To state a claim for negligent misrepresentation, Battenfield must allege and prove that she reasonably relied on the promises to her detriment. Ablondi v. Chase, 11 Mass.App.Ct. 902 (1981). See Restatement (Second) of Torts, §548 (“The maker of a fraudulent misrepresentation is not liable to one who does not rely upon its truth but upon the expectation that the maker will be held liable in damages for its falsity”). Battenfield has not even alleged, much less presented any facts, upon which it could be found that she relied on the alleged representations in any way which resulted in her suffering any loss. For this reason, Count XI shall be dismissed.
12.Breach of Fiduciary Duty — Count XII
Count XII alleges that Shinagel and Schopf stand in a fiduciary relationship to Battenfield by virtue of their status as supervisor and academic advisor, respectively. Battenfield has presented no evidence to suggest a fiduciary relationship between herself and Schopf and Shinagel and no such relationship exists as a matter of law. One party cannot unilaterally transform a business or academic relationship into a fiduciary relationship by reposing trust and confidence in another. Comstock v. Livingston, 210 Mass. 581, 584 (1912). “Mere respect for the judgment of another or trust in his character is not enough to constitute such a relation ... If the relation is a business one, the existence of the mutual respect and confidence does not make it fiduciary.” Id. Therefore, Count XII shall be dismissed.
13.Breach of Employment Agreement and of the Implied Covenant of Good Faith and Fair Dealing — Count XIII
Battenfield alleges that provisions of the Harvard University Personnel Manual in conjunction with oral and written representations and other circumstances of the employment relationship constitute an employment contract which Harvard subsequently breached. Although, in Hobson v. McLean Hospital Corporation, 402 Mass. 413, 416 (1988), the Supreme Judicial Court suggests that a personnel manual can constitute a contract if it sets forth specific oral promises and the conduct of the parties and the attendant circumstances so indicate, such necessary elements are not present in the case at hand. Aside from the Personnel Manual itself, discussed below, Battenfield offers no evidence of promises, conduct or employment circumstances which would give rise to a contractual employment relationship upon which she can base such a claim.
Furthermore, there is no evidence to support a conclusion that the Employee Manual here formed the basis of a contract. Battenfield did not negotiate the terms of the Manual, did not sign a copy of it, or assent to any of its terms. Indeed, Harvard expressly retained the right to modify the policies unilaterally and the Manual specified that it was intended for the “guidance” of Harvard University supervisors. See Jackson v. Action for Boston Community Development Inc., 403 Mass. 8, 14-15 (1988) (no implied contract existed based on manual’s terms where employer retained right to unilaterally modify terms, manual was for “guidance” of employees, no negotiation occurred over the terms and plaintiff never assented to terms); Mullen v. Ludlow Hospital Society, 32 Mass.App.Ct. 968 (1992), rev. denied, 413 Mass. 1103 (1992) (manual not basis for a contract because plaintiff did not negotiate its terms and hospital could change terms unilaterally). See also Pearson v. John Hancock Mutual Life Ins. Co., 979 F.2d 254, 256-57 (1st Cir. 1992). Because Battenfield has failed to demonstrate any of the elements necessary for the formation of a contract, her claim for breach of contract must fail.
Battenfield also alleges in Count XIII that Harvard breached the implied covenant of good faith and fair dealing. In Massachusetts, a plaintiff can bring a wrongful discharge claim for contract damages if the termination violates the implied contractual covenant of good faith and fair dealing. See DeRose v. Putnam Management Co., 398 Mass. 205, 210 (1986). The obligation of good faith and fair dealing prevents an employer from discharging an employee in order to *82 deprive the employee of compensation earned, but not yet received, or for a discharge which is against public policy. See Fortune v. National Cash Register Co., 373 Mass. 96 (1977) (termination of salesman for purpose of depriving him of large commission earned but not yet paid constituted breach of duty of good faith and fair dealing, although plaintiffs express contract was not violated); Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469 (1992).
Battenfield, however, is neither alleging a type of wrongful termination claim recognized in the Fortune context nor one that violates public policy.[7] Consequently, Battenfield has failed to state any actionable claim, and this count shall be dismissed.
14.Tortious Interference with Advantageous Relations — Count XIV
In Count XIV, Battenfield alleges that by creating and/or condoning a hostile work environment Schopf, Shinagel (and Harvard, vicariously) tortiously interfered with Battenfield’s business relations and employment. In order to prove that a superior or a co-worker tortiously interfered with an employee’s employment relationship, the employee must show that the defendant’s interference, in addition to being intentional, was improper in motive or means. Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 476 (1992) (Wright); United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812-17 (1990). The interference by a supervisor or co-worker is not actionable unless it is done “malevolently, i.e., for a spiteful, malignant purpose, unrelated to the legitimate corporate interest.” Wright, 412 Mass. at 476, quoting Sereni v. Star Sportswear Mfg. Corp., 24 Mass.App.Ct. 428, 432-33 (1987), rev. denied, 400 Mass. 1107 (1987).
The record is devoid of evidence that Schopf s purpose in criticizing Battenfield was unrelated to a legitimate corporate interest, or improper in any way. Similarly, Dean Shinagel’s alleged “condoning” of Schopf s conduct was not improper. In these circumstances, Battenfield’s allegations of a hostile work environment are not sufficient to state a claim of intentional interference with advantageous relations. Therefore, this count is dismissed.
15.Intentional Infliction of Emotional Distress — Count XV
Defendants argue that Battenfield’s claim for intentional infliction of emotional distress is barred by the exclusivity provisions of the Worker’s Compensation Act, G.L.c. 152, §§15, 24. The Supreme Judicial Court has held that the exclusivity provisions of the statute do not bar claims against co-employees or supervisors who commit intentional torts “not related to the interests of the employer.” O’Connell v. Chasdi, 400 Mass. 686, 690 (1987); Anzalone v. Massachusetts Bay Transportation Authority, 403 Mass. 119, 124-25. (1988). Where the complained-of conduct is related wholly to the defendant’s position as supervisor and to the manner in which the supervisor exercised his duties, the conduct is considered to be within the scope of employment and a claim for an intentional tort is barred. Anzalone, 403 Mass, at 124-25 (alleged conduct by supervisor, including violation of the terms of light duty work, related to his position as plaintiffs supervisor and was therefore furthering the interests of the transportation authority). However, an intentional tort arising from sexual harassment is “in no way within the scope of employment furthering the interests of the employer.” O’Connell v. Chasdi, 400 Mass. at 690.
The conduct of Schopf and Shinagel was related to a legitimate business interest, was consistent with their roles as supervisor and co-worker, and furthered the interest of their employer. Therefore, the conduct complained of arose in the course of their employment by Harvard and the claim for intentional infliction of emotional distress against Schopf and Shinagel is barred by the exclusivity provisions of the Worker’s Compensation Act. Anzalone, 403 Mass. at 125.
The allegations of sexual harassment by Ostrowski, however, form the basis of a common law claim of intentional infliction of emotional distress which is not barred by the exclusivity provision. O’Connell, 400 Mass, at 690. Summary judgment is therefore denied as to the claim against Ostrowski and allowed as to the claims against Schopf, Shinagel and Harvard.[8]
16. Negligent Infliction of Emotional Distress — Count XVI
The Worker’s Compensation Act bars an employee injured in the course of her employment by the negligence of a fellow employee from recovering from that fellow employee if the fellow employee also was acting in the course of employment. Mendes v. Tin Kee Ng, 400 Mass. 131 (1987). Schopf and Shinagel’s complained-of conduct arose in the course of their duties as employees of Harvard. Therefore, Battenfield’s claim against them for negligent infliction of emotional distress is barred. The alleged sexual harassment by Ostrowski, however, was not within the scope of his employment or in furtherance of the interests of his employer. O’Connell v. Chasdi, 400 Mass. at 690. Therefore, Battenfield’s claim against Ostrowski for negligent infliction of emotional distress is actionable.
17. Promissory Estoppel — Count XVII
Promissory estoppel requires proof that Battenfield reasonably relied on defendants’ promises to her detriment. See Hall v. Horizon House Microwave, Inc., 24 Mass.App.Ct. 84, 93 (1987). Battenfield’s claim of promissory estoppel fails because she has not alleged specific facts demonstrating that she relied to her detriment on the alleged promises.
18. Loss of Consortium — Count XVIII
A recovery for loss of consortium “require[s] proof of a tortious act that caused injury” to the plaintiffs spouse. Mouradian v. General Electric Co., 23 Mass.App.Ct. 538, 544 (1987) rev. denied, 399 Mass. 1105 (1987). Battenfield states claims of tortious injury against Ostrowski for assault and battery, and *83 negligent and intentional infliction of emotional distress. Accordingly, summary judgment for the defendant Ostrowski on this claim is inappropriate. The claims of loss of consortium against the defendants Schopf, Shinagel and Harvard are dismissed because there are no remaining claims of tortious injury against these defendants.
ORDER
For the foregoing reasons, it is hereby ORDERED that the motion for summary judgment brought by defendants Harvard University, Michael Shinagel, Sue Weaver Schopf, and Donald Ostrowski be:
1. DENIED as to the claim brought against Harvard University in Count III (violation of 15IB);
2. DENIED as to the claims brought against Donald Ostrowski in Counts I (violation of 15IB); II (assault and battery); XV (intentional infliction of emotional distress); XVI (negligent infliction of emotional distress); and XVIII (loss of consortium);
3. and otherwise ALLOWED.

On July 27, 1993, this court allowed defendants’ motion to strike the affidavit of Delise Battenfield because it was filed late and did not comport with the requirements of Rule 56(e). Even had it been timely filed and in proper form, however, it would not have affected the outcome of this motion because large portions of the affidavit were not made on the basis of personal knowledge, and otherwise consisted of hearsay or vague and general allegations of expected proof, rather than averments of specific facts. See Mass.R.Civ.P. 56(e).

 The complaint was filed in July 1991, so that the alleged assaults are not time-barred.

 The plaintiffs catalogue of alleged statements is often confusing and repetitive and includes items that do not appear to be statements or remarks at all. Although not exhaustive, the following is a list of the statements the court considers to be expressions of opinion, statements made in the course of evaluating her job performance, or a combination of the above: “Masters at Barkdale, Zero significance”; “Delise’s general incompetence, manipulativeness, and dishonesty”; “For weeks Delise did nothing for us . . . She didn't appear to be doing much of anything else either”; “Always she did what Dodge asked her to do and nothing more”; “Delise was made Sarah's supervisor only to satisfy the requirement for her promotion that she must be supervising someone”; “Delise has lied on a number of occasions”; “Delise is malicious”; “It was, in fact, the worst proposal I had received all year”; “The alternative thesis project. . . was likewise unacceptable”; “Delise had no idea how to do research”; “She couldn’t produce any term papers”; “Database was so chaotic . . . impossible to use”; "The mass mailing was a public relations nightmare"; “Delise is careless, inattentive, . .. and generally puts as little into the job as she can"; “Such a person . . . any job of serious responsibility”; “Delise is an intellectually and professionally inferior person”: “When I first started working here, I soon found out that I couldn’t get more than a yawn from Delise”.

 Chapter 214, §1B states in relevant part: “A person shall have a right against unreasonable, substantial or serious interference with his privacy.”

 Indeed, Battenfield has not even alleged that she was wrongfully terminated.

 Harvard cannot be vicariously liable for any sexual harassment by Ostrowski because it would clearly have been outside the scope of his employment.