Fabricant, J.
This action arises from the defendant bank’s action in delaying release of deposited funds pending investigation of account activity that the bank considered indicative of potential fraud. The plaintiffs, Mohammed Hazem Fatahi and Joanne Fatahi allege breach of contract in the withholding of their funds, libel and slander in certain statements made regarding the reason for its action, and violation of G.L.c. 93A. Presently before the Court is the defendant’s motion for summary judgment on all counts of the complaint. For the reasons that will be explained, the motion will be allowed.
BACKGROUND
The summary judgment record establishes the following facts as undisputed.[2] The plaintiffs maintained a checking account with the defendant’s predecessor, BankBoston, N.A. The account was governed by a Personal Deposit Account Agreement (the “PDA”), which contained a number of provisions regarding availability of funds. The PDA provided that funds deposited would generally be available the next day, but that a variety of circumstances could delay availability. Among the circumstances identified as grounds for delay were “(w]e believe a check you deposit will not be paid,” and “(y]ou deposit checks totaling more than $5,000 on any one Business Day.” The PDA further provided that ”[w)e will tell you if we delay your ability to withdraw funds for any of these reasons . . . and we will also tell you when the funds will be available.” In addition, the PDA provided that “(glenerally,... funds from non-local checks generally will be available no later than the seventh Business Day after the day of your deposit.”
On February 2, 1998, Mr. Fatahi deposited into the account a check for a credit card cash advance, drawn on a non-local bank, in the amount of $10,000. The next day, February 3, 1998, Mr. Fatahi attempted to withdraw the $10,000 to purchase a bank check. Observing that the funds Mr. Fatahi sought to withdraw had been deposited only the day before, the Service Supervisor consulted the branch manager. The manager reviewed the account and noted, in addition to the recency and source of the deposit, that the average balance in the account prior to February 2, 1998, had been approximately $400. The manager placed a hold on the account pending verification of the deposit. The Bank’s computer system reflected the hold by entries in two fields: in the field for “Reason” the word “Fraud” appeared; in the field for “Comment” the phrase “Pending Verification” appeared. No evidence indicates that anyone other than Bank employees in the performance of their duties ever had access to or saw the entries.
Later that day, Mr. Fatahi telephoned the bank and spoke with a staff person, who checked the computer record and reported back to him, according to Mr. Fatahi’s affidavit, “that there was a notation of ‘fraud’ on the account. ’’ He then went to another bank branch and spoke with another staff person, who checked the computer again, “confirmed that there was a ‘fraud’ hold on the account,” and showed Mr. Fatahi the notation. Other employees and customers were present at the time, but no evidence is offered that any of them heard the employee’s statement or observed the notation.
Apparently in response to these inquiries, Diane Asaro, a Sales & Service Associate with the Bank, sent Mr. Fatahi a letter, dated February 3, 1998, stating that “there was a multi-day hold placed on the funds with a note stating fraud and pending verification of deposit. This hold was placed by Melissa Robinson and placed until February 9, 1998.” No evidence offered indicates that anyone other than Mr. Fatahi ever saw this letter. The next event revealed in the evidence offered is a letter to the Fatahis from bank Service Supervisor David Lane, dated February 6, 1998, indicating that “the account is encoded to be closed. The *394 bank card associated with the account is also placed on hold.” Two more letters from Lane to the Fatahis, dated February 11 and 13, 1998, contained identical wording. Again, no evidence offered indicates that anyone other than the plaintiffs ever saw either of these letters. The Bank removed the hold on the account and released the funds thereafter, although the record does not indicate precisely when.[3]
DISCUSSION
This Court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. See Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and showing that the summary judgment record entitles it to judgment as a matter of law. See Flesner v. Technical Communications Corp., 410 Mass 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, 404 Mass. at 17. A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. See Kourouvacilis, 410 Mass. at 714. ”[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts alone to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
1. Breach of Contract
To meet their burden of proof at trial on the claim of breach of contract, the plaintiffs would have to offer evidence sufficient to show the existence and terms of a contract, and breach of a promise contained therein. The undisputed facts presented here establish that the plaintiffs will be unable to do so. The PDA contains no promise that funds will be released within any specified period of time; rather, it indicates only that certain time standards will “generally” be met, but that the Bank may take longer when circumstances warrant. An overall requirement of reasonableness may be implied, but nothing in the evidence demonstrates any unreasonableness. The effort to withdraw a deposit made only the previous day, drawn on a non-local bank, in an amount far in excess of the account’s previous average balance, certainly provided reasonable ground for suspicion and investigation. No evidence indicates that the investigation took longer than reasonably necessary. Nor does the evidence support the theory that the Bank failed to keep its promise, contained in the PDA, to inform the plaintiffs of the delay, of the reason for it, and of when the funds would be available. To the contrary, the undisputed facts establish that the Bank did exactly that on multiple occasions, both orally and in writing. Accordingly, the defendant is entitled to judgment as a matter of law on the breach of contract claim.
2. The Defamation Claims
To meet their burden of proof of defamation, the plaintiffs would have to show that the defendant negligently, intentionally or recklessly published, to one or more third parties,, a false and defamatory statement of or concerning the plaintiffs, and that such publication of the statement caused actual damage to the plaintiffs’ reputation. See Dulgarian v. Stone, 420 Mass. 843, 847 (1995); McAvoy v. Shufrin, 401 Mass. 593, 596 (1988); Stone v. Essex County Newspaper, Inc., 367 Mass. 849, 858 (1975); Restatement (Second) of Torts §§558, 577 (1977). Where the undisputed facts establish an inability to show any one or more of these elements, summary judgment is warranted. Indeed, summary judgment is especially favored in defamation cases because of the public interest in minimizing burdens on free speech. See King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987), cert. denied, 485 U.S. 940, 962 (1988); Goodbout v. Cousens, 396 Mass. 254, 258 (1985).
The record presented here establishes that the plaintiffs lack evidence from which to prove any of the elements of defamation. The statements that appear in the evidence offered consist of the computer notation, and a series of oral and written communications, each directed to one or both of the plain tiffs, reporting the content of the computer notation and the fact of the hold on the account. These oral and written reports from bank staff were indisputably true; they accurately reported that the account was on hold for the reason reflected in the computer notation. The claim thus comes down to the computer entry itself, particularly the word “fraud.”
An accusation that one has committed fraud may well be defamatory, but the computer entry in issue here does not contain any such accusation against the plaintiffs, nor, in context, could it reasonably be construed as implying such an accusation. See Tartaglia v. Townsend, 19 Mass.App.Ct. 693, 698 (1985) (statement must be read in its context, and its defamatory tendency must be “specific and significant”). The pertinent context includes the comment “Pending Verification,” as well as the likely common understanding among bank employees of the bank’s routine practices in holding funds while verifying deposits when unusual account activity raises a question of potential fraud, whether by or against an account holder. Under these circumstances, no reasonable bank employee could construe the entry as indicating anything more than that circumstances had arisen warranting an *395 investigation of potential fraud involving the account by some unidentified person.
Further, even if the evidence were sufficient to show the making of some false and defamatory statement, the undisputed facts establish that the plaintiffs are unable to show any non-privileged publication. The evidence offered shows, at most, a computer entry that was available only to bank employees engaged in the performance of their duties, and statements made orally or in writing by bank employees to one or both of the plaintiffs. The latter clearly does not constitute publication to any third party. The former may have involved publication by one bank employee to another in furtherance of their common enterprise, but such internal publication is subject to a conditional privilege. See Bratt v. International Business Machines Corp., 392 Mass. 508, 512-13 (1984); Restatement (Second) of Torts, §594. Nothing in the evidence offered would support a finding of abuse of the privilege.
Finally, the plaintiffs have offered no evidence of any damage to their reputations. They have offered nothing to show that anyone believed that they had committed fraud, and consequently thought less of them or treated them any differently than otherwise, as a result of any statement by the bank or its employees. Accordingly, the defendant is entitled to judgment as a matter of law on the defamation claims.
3. The c. 93A Claim.
To establish a violation of G.L.c. 93A, the plaintiffs would have to show that the bank engaged in some conduct toward them that violated “at least the penumbra of some common-law, statutory, or other established concept of fairness,” and was “unethical or unscrupulous.” Wasserman v. Agnastopoulos, 22 Mass.App.Ct. 672, 679 (1986), quoting PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975); see also Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 27 (1997). The evidence presented here falls short of that standard. What the record shows, at most, is that when confronted with a set of circumstances that reasonably warranted suspicion of fraudulent activity, the Bank reacted by exercising its contractual right to hold funds until it could investigate. Such conduct does not violate c. 93A.[4]
CONCLUSION AND ORDER
For the reasons stated, Fleet Boston Financial Corporation’s Motion for Summary Judgment is ALLOWED.

 By their failure to respond to the defendant’s statement of undisputed material facts pursuant to Superior Court Rule 9A(b)(5), the plaintiffs have admitted the facts set forth therein and have waived the opportunity to identify additional facts material to the motion. The Court has nevertheless reviewed the affidavits and exhibits submitted by the plaintiffs, so as to identify any evidence indicating the existence of a genuine dispute of material fact, and has found none.

 An account statement submitted by the plaintiffs shows a cash withdrawal and payment of a check, both in relatively small amounts, on February 17, 1998, and then payment of a series of checks on March 5, 9, and 10, with the last of these in the amount of $10,029.37.

 The plaintiffs complaint alleges that the Bank acted “on the pretext of a potential fraud,” but no evidence offered supports the allegation of pretext, nor have the plaintiffs identified any claimed ulterior motive.