Murphy, J.
The plaintiff brings this action based upon alleged discrimination in her employment by the defendants based on her gender. Specifically, she claims to have been sexually harassed in the workplace. The plaintiffs complaint alleges thirteen counts: Count I — violation of G.L.c. 151B, §4(1); Count II — violation of G.L.c. 214, §1C; Count III — violation of G.L.c. 93, §102; Count IV — assault; Counts V, VI, VII — intentional or negligent infliction of severe emotional distress; Count VII — negligent hiring, retention, and supervision of defendants Petersen and Chase; Counts IX, X — intentional interference with advantageous economic or contractual relations; Count XI — breach of contract; Count XII — violation of G.L.c. 12, §§11H and I; Count XIII — loss of consortium. The matter is presently before the court on defendant Petersen’s motion for summary judgment as to Counts I, II, III, IX, and XII.
BACKGROUND
The undisputed facts are as follows. The plaintiff, Bette Sobotka (“Sobotka”), was employed by defendant Westfield Savings Bank (“the Bank”) as an auditor from October 5, 1987 through January 15, 1992, when she was terminated. On July 14, 1992, Sobotka filed a complaint with the Massachusetts Commission Against Discrimination (“MCAD”) alleging that she had been discriminated against by her employer on the basis of her sex. The complaint named Westfield Savings Bank as the respondent, but also listed “upper-level management” as contributors to the discrimination. The MCAD complaint did not specifically mention defendant Petersen (“Petersen”), who was employed by the Bank as a comptroller.
The MCAD investigated the charges of discrimination set forth in Sobotka’s MCAD complaint. In response to the Bank’s “statement of position,” Sobotka states that “(t]wo individuals in particular, Mr. Gary Petersen and Mr. David Chase, were the source of the discriminatory conduct.” See September 23, 1992 letter from Sobotka’s attorney, Michael O. Shea to Gilbert May of MCAD, attached to Affidavit of Alan Cassella. She then goes on to describe specific incidences of allegedly discriminatory conduct. The Bank’s counsel responded to these accusations that Petersen and Chase “categorically and firmly deny each and every allegation.” See October 16, 1992 letter from Robert L. Dambrov to Gilbert May of MCAD attached to Affidavit of Alan Cassella.
*194 Pursuant to c. 151B, §9, Sobotka filed the present action in the Superior Court.
DISCUSSION
Summaiy judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Id. at 17. “[T]he party opposing the motion cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summaiy judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Petersen moves for summaiy judgment as to Counts I, II, III, IX, and XI.
A. Count I — G.L.c. 15 IB
General Law c. 15 IB, §4 prohibits sex discrimination in employment.[3] Sexual harassment is considered prohibited sex discrimination under c. 151B. G.L.c. 151B, §4(1) and §4(16A); College Town, Div. of Interco, Inc. v. MCAD, 400 Mass. 156, 162 (1987). Before resort to the courts for employment discrimination, however, a complainant must file a complaint with the MCAD. G.L.c. 151B, §9. The MCAD’s administrative regulations require that MCAD complaints contain “appropriate identification of the Complainant(s) and the person(s) alleged to have committed unlawful discriminatory acts...” 804 CMR 1.03(4)(a). Petersen argues that since Sobotka did not specifically name him as a respondent in her MCAD complaint, she is barred from instituting this civil suit against him.
The policy behind requiring complainants to proceed before the MCAD or the Equal Employment Opportunity Commission (“EEOC”) is to promote conciliation and to secure voluntary compliance so as to avoid a civil action altogether if possible. Walters v. President & Fellows of Harvard College, 616 F.Supp. 471, 475 (D.C.Mass. 1985); Denny v. Westfield State College, 25 FEP 957, 960 (D.C.Mass. 1981). In that regard, the purpose behind the administrative filing requirement for both the MCAD and the EEOC is two-fold: 1) it provides notice to the charged party; and 2) it provides the agency with an opportunity to investigate and conciliate the discrimination claim. Conroy v. Boston Edison Co., 758 F.Supp. 54, 57 (D.Mass. 1991); Denny, supra at 960. See also, Tuber v. Continental Grain Co., 36 FEP 933, 935 (S.D.N.Y. 1984).
In light of these purposes, strict adherence to the filing requirement is not always compelled. In Denny, supra, the plaintiffs named individuals as defendants in a civil discrimination suit who had not been named before the MCAD or the EEOC. In holding that those defendants who were aware of the administrative actions could be parties to the civil suit, the court reasoned that “[I]f a party has a close legal relationship with a named party and has actual notice of the EEOC charge, to the extent that he could have participated in conciliation efforts, he should not be heard to cry ‘foul’ when later made a defendant in the suit.” Id. at 962, citing Stevenson v. Int’l Paper Co., 432 F.Supp. 390 (W.D.La. 1977). Similarly, in Tuber, supra, the court held that two individuals who were not named in the EEOC complaint but who had actual notice of the administrative action and who participated in the conciliation process were proper defendants in the civil discrimination suit.
In the present matter, the purposes of the MCAD filing requirement have been satisfied. Therefore to dismiss Sobotka’s c. 151B claim would be to unnecessarily put form over substance. Petersen was clearly aware of the MCAD complaint. First, Sobotka’s complaint states that "certain statements were made by upper level management at the Westfield Savings Bank regarding my gender . . . These statements were at least suggestive that my ability to perform my job responsibilities may have been affected by my gender.” As comptroller, Petersen is upper level management at the Bank. This statement, therefore, is arguably enough to have put Petersen on notice of the claim against him.
The complaint itself, however, is not the most compelling evidence of Petersen’s notice of the charge. As noted above, in various correspondence with the MCAD, Sobotka distinctly named Petersen as one of the discriminators and described specific instances of how he allegedly harassed her. Further, Petersen responded to these allegations by categorically denying them. This demonstrates that not only did Petersen have actual knowledge of the charges, but he also took part in the MCAD’s conciliation process. As such, there is no reason to bar Sobotka from naming him in the presente. 151B action.[4] Therefore, Petersen’s motion for summaiy judgment as to Count I must be denied.
B. Count II — G.L.c. 214, §1C
Chapter 214, §1C of the Massachusetts General Laws expressly grants all persons the right to be free from sexual harassment as defined in c. 151B. It also states that “[t]he superior court shall have the jurisdiction in equity to enforce this right. . .” G.L.c. 214, §1C. Petersen seeks summary judgment on this count, arguing that c. 151B is the exclusive remedy for damages arising from employment discrimination.[5]
There are no reported cases, regarding exclusivity or otherwise, which have interpreted the language of this statute. The express language, however, grants sexual harassment victims direct access to the Superior Court apart from the procedures of c. 151B. Had the legislature intended victims of sexual harassment in the employment context to only proceed in accor *195 dance with c. 151B, it could have said so explicitly. As one commentator has explained,
[Chapter] 214, §1C creates a civil remedy for sexual harassment in employment or education independent of c. 151B filing requirements or administrative procedures. Given the explicit nature of this independent remedy, which was created at the same time that the legislature added explicit sexual harassment prohibitions to c. 151B and 151C, it is clear that the MCAD procedures are optional, not mandatory, for sexual harassment plaintiffs.
Marjorie Heins, Massachusetts Civil Rights Law, 76 Mass.L.Rev. 26, 34 (1991) (footnotes omitted). See also, Henry v. New England Telephone and Telegraph Co., Civil No. 92-4192 (Suffolk Super. Ct. May 5, 1993, Flannery, J.).
Sobotka can therefore maintain both her c. 151B and her c. 214, §1C claims. Petersen’s motion for summary judgment on Count II must be denied.
C.Count III — G.L.c. 93, §102
Again arguing that c. 151B is the exclusive remedy for Sobotka’s injuries, Petersen has moved for summary judgment as to Count III. The issue of whether c. 151B’s exclusivity provision is a bar to bringing employment discrimination related claims under c. 93, §102 has recently been reported to the Appeals Court and oral argument has already been heard. See Agin v. Federal White Cement, Inc., Civil Action No. 91-1426 (Hampden County, Moriarty, J.) This Court therefore reserves comment on this issue until it is decided by the Appeals Court.
D.Count IX — Intentional Interference with Contractual Relation
Whether Sobotka’s intentional interference with contractual relations claim is precluded by c. 151B is controlled by the Supreme Judicial Court’s decision in Comey v. Hill, 387 Mass. 11 (1982). There, the plaintiff was employed as a sales representative for one of the defendant companies. As part of his employment, he sold goods for a second defendant company. When the second company became dissatisfied with plaintiffs performance, allegedly because of his age, it induced the first company to prevent the plaintiff from selling its (the second company’s) product.
The plaintiff sued both companies for violation of c. 151B and intentional interference with advantageous relationship. As here, the second company argued that c. 15 IB was the exclusive remedy. The court disagreed. It held that “[although G.L.c. 151B is a comprehensive statute ... we do not view the statute as tending to narrow or eliminate a person’s common law rights where applicable.” Id. at 20. The court allowed the plaintiff to maintain both claims.
The present matter is similar. Sobotka’s claim against Petersen is for intentional interference with contractual relations. Like the second company defendant in Comey, Petersen is not Sobotka’s actual employer, but has allegedly interfered with her relationship with that employer. Here, Sobotka has made out a common law claim of intentional interference with contractual relations. It has been held that the “tort is made out, and the injured party may sue, where there is a loss resulting from the defendant’s intentional and improper interference with the business relationship between the injured party and a third person.” Melley v. Gillette Corp., 19 Mass.App.Ct. 511, 513 (1985), citing Comey, supra at 19. This pre-existing common law right is not barred by c. 151B.
In support of his argument, Petersen cites Melley, supra and Mouradian v. General Electric Co., 23 Mass.App.Ct. 538. These cases are distinguishable for two reasons. First, in each case the plaintiff sues only his direct employer; there is not, as here or in Comey, some third party who allegedly interfered with an advantageous relationship. Second, in the above cases the plaintiffs claims are for breach of good faith in employment contracts on the grounds of termination for discriminatory reasons; they are not, as in the present matter, based on a pre-existing common law claim of intentional interference with contractual relations.
Therefore, as Sobotka’s claim for intentional interference with contractual relation is not barred by c. 15 IB, Petersen’s motion for summary judgment as to Count IX must be denied.
E.Count XII — G.L.c. 12, §11H and §111
Petersen’s final argument is that summary judgment should be granted as to CountXII, again because c. 151B provides the exclusive remedy for employment discrimination related claims. The caselaw, both Massachusetts and federal, overwhelmingly supports Petersen’s position. See Sereni v. Star Sportswear Manufacturing Corp., 24 Mass.App.Ct. 428, 431 (1987); Mouradian v. General Electric Co., 23 Mass.App.Ct. 538, 543 (1987); Bergenson v. Franchi, 783 F.Supp. 713, 721 (D.Mass. 1992); Conway v. Boston Edison Co., 745 F.Supp. 773, 779-80 (D.Mass. 1990); Butler v. RMS Technologies, Inc., 741 F.Supp. 1008, 1010-11 (D.Mass. 1990); Bester v. Roadway Express, Inc., 741 F.Supp. 321, 322-23 (D.Mass. 1990). There is no reason why the result in this case should be different. Petersen’s motion for summary judgment with respect to Count XII is therefore granted.
ORDER
It is therefore ORDERED that defendant Petersen’s motion for summary judgment as to Counts I, II, and IX is DENIED. It is further ORDERED that defendant Petersen’s motion for summary judgment as to Count XII is ALLOWED. With respect to defendant Petersen’s motion for summary judgment as to Count III — violation of G.L.c. 93, §102 — the Court reserves judgment until such time as the Massachusetts Appeals Court has expressed an opinion on the issue.

 G.L.c. 151B, §4 provides in pertinent part:
*196 It shall be an unlawful practice:
1. For an employer, by himself or his agent, because of the... sex... of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.

 In support of his argument, Petersen points to Denton v. Int’l Bro. of Boilermakers, 653 F.Supp. 55 (D.Mass. 1986), which held that an individual not named in an EEOC complaint could not be a defendant in a subsequent civil action. That case is distinguishable, however, because the defendant there had no notice of any claims specifically against himself while the complaint was before the EEOC.

 G.L.c. 151B, §9 holds in part that “as to acts declared unlawful by section four, the procedure provided in this chapter shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned.”