Connolly, J.
This matter comes before the Court on the joint motion of the defendants, Boch Oldsmobile, Inc. (“Boch”), Ernest Boch, Sr. (“Ernest, Sr.”), Ernest Boch, Jr. (“Ernest, Jr.”) and Helen Smith, for summary judgment pursuant to Mass.R.Civ.P. 56. On October 28, 1992, the plaintiff, MaryBurman, filed a complaint containing seven counts against the various defendants. On October 13, 1994, the defendants filed a motion for summary judgment on Count I, violation of G.L.c. 151B, against all named defendants; Count II, violation of G.L.c. 214, §1C, against all defendants; Count III, violation of G.L.c. 93, §102, against all named defendants; Count IV, violation of G.L.c. 151B, §4(4), against all named defendants; CountV, Intentional and/or Negligent Infliction of Emotional Distress, against Ernest Boch, Jr.; and Count VII, Intentional Interference with Advantageous Contractual Relations, against Ernest Boch, Jr. and Helen Smith. For the reasons discussed below, the defendants’ motion for summary judgment on Count III is ALLOWED and the defendants’ motion for summary judgment on Counts I, II, IV, V, VI[2] and VII[3] is DENIED.
BACKGROUND
The summary judgment record, when considered in favor of the plaintiff as the non-moving party, indicates the following. The plaintiff was employed as the Aftersales Manager at Boch Oldsmobile, Inc. from September 9, 1989 through February 22, 1990. During the course of the plaintiffs employment, Ernest, Sr. served as President and Treasurer of Boch Oldsmobile; Ernest, Jr. served as New Car Sales Manager and Vice President of Boch Oldsmobile; and Helen Smith served as Vice President of Finance. As Aftersales Manager, the plaintiff reported directly to Helen Smith. However, the nature of the plaintiffs job required her to work with Ernest, Jr. She was required to attend his daily meetings. Since the aftersale product was sold immediately after a car was sold, team work and a close working relationship between the car sales personnel and the Aftersales Manager was important.
The plaintiff alleges that the sales force at Boch Oldsmobile was primarily male. The male sale employees, including Ernest, Jr., frequently used sexually explicit and derogatory language about women. Specifically, the plaintiff claims Ernest, Jr. referred to female customers as “cunt,” "bitch," “pussy” and “pussy whipped.” The plaintiff found Ernest, Jr.’s language “distressing,” “unprofessional,” “embarrassing” and offensive." She alleges that when she asked him to stop using this language, he ignored her.
In late November, 1989, Ernest, Jr.’s derogatory and demeaning remarks about women were personally directed toward the plaintiff. The plaintiff alleges that Ernest, Jr. told her that he was going to include one of her products, a security system, in a car at no cost to the customer. The plaintiff claims this was not the first time he had given away her sale and commission. When the plaintiff objected to his actions, Ernest, Jr. allegedly screamed at her, saying, “You fucking cunt. My name is on this building and I can do anything I want.” When the plaintiff protested, she claims Ernest, Jr. added, “I’ll call you anything I want, even worse than that.” After the plaintiff told him there was nothing worse, Ernest, Jr. allegedly responded with the words, “Fuck you, bitch.”
The plaintiff claims that there was not an adequate investigation conducted after she expressed her discontent with the inappropriate behavior of Ernest, Jr. When she reported the incident to Helen Smith, Ms. Smith allegedly stated that the remarks were no big deal and she had been called worse. Additionally, when the plaintiff attempted to speak to Ernest, Sr., the only person with the power to fire or discipline Ernest, Jr., he allegedly failed to conduct a timely or sufficient investigation.
When other employees questioned the plaintiff about what action, if any, she was going to take to resolve the situation, she claims she told them she might go to court. On February 21, 1990, the plaintiff *443 filed a charge with the Massachusetts Commission Against Discrimination (“MCAD”). The following day, February 22, 1990, the plaintiff was terminated from Boch. According to the plaintiff, Helen Smith fired her because of the “Ernest thing” and because, “things weren’t working out.” The defendants argue that the plaintiff was not fired because of her claims of sexual harassment, but because her work performance was unsatisfactory. However, the plaintiff argues that she never received any written warning, appraisal or notice concerning her performance. Instead, she asserts that she won a sales award in January 1990 and had been sent to the Super Bowl in New Orleans.
On November 8, 1991, the MCAD found probable cause to credit the plaintiffs complaint.[4] The plaintiffs filed the present suit in the Superior Court on October 28, 1992.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassessov. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’lBank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass, at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
A. Count I: G.L.c. 151B
Chapter 15IB, §4 of the Massachusetts General Laws provides:
It shall be an unlawful practice: 1. For an employee, by himself or his agent, because of the race, color religious creed, national origin, sex,... or ancestry of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.
G.L.c. 151B, §4(1). The Supreme Judicial Court held in College-Town Division oflnterco, Inc. v. Massachusetts Commission Against Discrimination, 400 Mass. 156, 162 (1987), that sexual harassment may constitute a violation of G.L.c. 151B, §4(1), which prohibits employment discrimination on the basis of gender. Ramsdell v. Western Massachusetts Bus Lines, Inc., 415 Mass. 673, 676-77 (1993). The Court reasoned that “a work environment pervaded by harassment or abuse, with the resulting intimidation, humiliation and stigmatization, poses a formidable barrier to the full participation of an individual in the workplace.” College-Town, 400 Mass, at 162. The term “sexual harassment” is defined by G.L.c. 151B, §1(18) as:
sexual advances, requests for sexual favors and other verbal or physical conduct of sexual nature when (a) submission to or rejection of such advances, requests or conduct is made either explicitly or impliedly a term or condition of employment or as a basis employment decisions; (b) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual’s work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment. Discrimination on the basis of sex shall include, but not be limited to, sexual harassment.
The plaintiff does not make any allegations that submission to sexual requests or advances was a condition of her employment. Instead, she alleges that the defendants violated G.L.c. 151B by creating a sexually hostile work environment. Therefore, the Court will focus on the definition of sexual harassment of G.L.c. 151B, §1(18)(b).
The plaintiff asserts that she found her work environment at Boch to be “distressing,” embarrassing" and “offensive.” Ultimately, she claims that this atmosphere caused her to suffer severe emotional distress, including anxiety, loss of sleep, hyperventilation, headaches, and hospitalization. The defendants argue that the alleged conduct was isolated and neither sufficiently severe nor adequately pervasive to amount to actionable harassment under G.L.c. 151B. “In evaluating a hostile work environment claim, a court will examine whether, from the point of view of a reasonable person in the plaintiffs position, the alleged misconduct was sufficiently pervasive to alter the conditions of her employment.” Battenfield v. Harvard University, Civil No. 91-5089-F, 1 Mass. L. Rptr. 75 (Middlesex Super. Ct. August 31, 1993), citing Gnerre v. Massachusetts Commission Against Discrimination, 402 Mass. 502, 507-08 (1988); College-Town, 400 Mass at 162. Such a determination must be made on a case-by-case basis. In the case at bar, whether the alleged statements rose to the level of illegal sexual *444 harassment is a question of fact to be determined at trial.
In Count I, the plaintiff also alleges that the defendants failed to adequately investigate or remedy her complaints in violation of G.L.c. 151B. Specifically, Ernest, Sr. delayed in responding to the plaintiffs complaints; no witnesses were interviewed; as Ernest, Jr.’s father, Ernest, Sr. was not a neutral investigator; and no formal disciplinary action was taken.
An employer who is put on notice of sexual harassment in the workplace, whether caused by supervisors, co-workers or customers, and who fails to take adequate steps to remedy the situation, may be liable for sexual harassment pursuant to G.L.c. 151B. College-Town, 400 Mass. 163.
The Investigating Commissioner of the Massachusetts Commission Against Discrimination conducted a probable cause finding and concluded, in part, that he found probable cause to credit the plaintiffs allegations of her employer’s failure to take adequate steps to remedy the situation. Therefore, the Commissioner stated that the evidence presented could lead a reasonable fact finder to conclude that the plaintiff was discriminated against in violation of G.L.c. 151B, §4. After reviewing the summary judgment materials, the Court agrees with the Commissioner’s conclusion and holds that summary judgment on the claim of failure to investigate the plaintiffs allegations is inappropriate.
B.Count II — G.L.c. 214, §1C
Chapter 214, §1C of the Massachusetts General Laws grants all persons the right to be free from sexual harassment as defined in G.L.c. 151B. It also provides that “(t]he superior court shall have jurisdiction in equity to enforce this right... and to award damages.” G.L.c. 214, §1C. The defendants seek summary judgment on this count, arguing that c. 151B is the exclusive remedy for damages arising from employment discrimination.
There are no reported court cases regarding whether the exclusivity of G.L.c. 15IB prevents an independent or alternative claim under G.L.c. 214, glC [5] “The express language however, grants sexual harassment victims direct access to the superior court apart from the procedures of c. 15IB. Had the legislature intended victims of sexual harassment in the employment context to only proceed in accordance with c. 15 IB, it would have said so explicitly.” Sobotka v. Westfield Savings Bank, Civil No. 93-332, 2 Mass. L. Rptr. 193 (Hampden Super. Ct. April 21, 1994). See also, Henry v. New England Telephone and Telegraph Co., Civil No. 92-4192 (Suffolk Super. Ct. May 5, 1993).
Accordingly, the plaintiff can maintain both her G.L.c. 151B and G.L.c. 214, §1C claims. The defendants’ motion for summary judgment on Count II must be denied.
C.Count III — G.L.c. 93. §102
The Commonwealth’s Equal Rights Act, G.L.c. 93, §102, gives employees a direct right to sue for sexual discrimination, including sexual harassment, in employment.[6] Again arguing that G.L.c. 151B is the exclusive remedy for the plaintiffs remedies,-the defendants move for summary judgment on Count III.
The issue of whether G.L.c. 151B’s exclusivity provision is a bar to bringing employment discrimination related claims under G.L.c. 93, §102 has recently been decided by the Supreme Judicial Court in Charland v. Muzi Motors Inc., 417 Mass. 580 (1994). In Charland, the Court ruled that G.L.c. 15IB preempts claims brought under G.L.c. 93, §102. Consequently, under Charland, the defendant’s motion for summary judgment on Count III is appropriate.
D.Count IV — G.L.c. 151B, §4(4)
The plaintiff claims that the defendants unlawfully terminated her employment and/or aided in the termination in retaliation for her complaints of sexual harassment. The legislature recognized that a person who complained of discrimination risked retaliation, therefore, it provided a separate provision which prohibited such conduct. G.L.c. 151B, §4(4).[7]
In support of the retaliation claim, the plaintiff argues that she engaged in protected activity. She asked Ernest, Jr. to stop using sexually offensive language; she protested when he verbally attacked her; she explained to Ms. Smith and others that Ernest, Jr.’s conduct hurt her; and she suggested that she might go to court. Moreover, when she was fired, she was told it was “because of the Ernie thing.”
The defendants contend that the plaintiff was discharged for poor work performance. Additionally, the defendants argue that the plaintiff could not establish a prima facie case of retaliation because she failed to prove that they had actual or imputed knowledge of her filing of the MCAD charge.
When, as in the present case, an employer’s motive or intent in discharging an employee is contested, summary judgment is improper. Flesner v. Technical Communications Corp., 410 Mass. 805, 812 (1991). “In such cases, ‘[m]uch depends on the credibility of the witnesses testifying as to their own states of mind. In these circumstances, the jury should be given an opportunity to observe the demeanor, during direct and cross-examination, of the witnesses whose states of mind are at issue.’ ” Id. at 809 quoting Craley v. Matson Navigation Co., 434 F.2d 73, 77 (5th Cir. 1971). Accordingly, summary judgment is denied on Count IV.
E.Count V — Intentional and/or Negligent Infliction Of Emotional Distress
1) Intentional Infliction of Emotional Distress
The plaintiff alleges that Ernest, Jr.’s extreme and outrageous behavior constitutes intentional infliction of emotional distress. Defendants argue that this *445 claim is barred by the exclusivity provisions of the Workers’ Compensation Act, G.L.c. 152, §§15, 24, which provides in relevant part:
[a]n employee shall be held to have waived [her] right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if [she] shall not have given [her] employer, at the time of [her] contract of hire, written notice that [she] claimed such right...
G.L.c. 152, §24. “Personal injuries” are defined in the statute as including “action which is the intentional infliction of emotional distress . . .” G.L.c. 152, §1(7) (A).
The Supreme Judicial Court has held that the exclusivity provision of the Workers’ Compensation Act does not bar claims against a fellow employee who commits an intentional tort which “was in no way within the scope of employment furthering the interests of the employer.” O’Connell v. Chasdi 400 Mass. 686, 690 (1987). A claim, like the plaintiffs, for an intentional tort arising from sexual harassment is “in no way within the scope of employment furthering the interests of the employer.” Id. The Court reasoned “that the right to commit such acts with impunity was [not] part of the general compromise of rights involved in the act. Moreover, liability for such intentional torts is not part of the circumstances of employment, unlike liability for negligently injuring others in the course of employment. Such intentional torts are not an accepted risk of doing business.” Id. at 690-91.
Accordingly, the Court denies defendants’ motion for summary judgment on plaintiffs claim for intentional infliction of emotional distress.
2) Negligent Infliction of Emotional Distress
The Workers’ Compensation Act bars “an employee injured in the course of [her] employment by the negligence of a fellow employee [from recovering] from that fellow employee if [the fellow employee] was also acting in the course of his employment. O’Connell, 400 Mass, at 690 quoting Saharceski v. Marcare, 373 Mass. 304, 306 (1977), citing Murphy v. Miettinen, 317 Mass. 633, 635 (1945). The alleged sexual harassment by Ernest, Jr. was not within the scope of his employment or in furtherance of the interests of his employer. Battenfield v. Harvard University, Civil No. 91-5089-F, 1 Mass. L. Rptr. 77 (Middlesex Super. Ct. August 31, 1993), citing O’Connell, 400 Mass, at 690. Therefore, the plaintiffs claim against Ernest, Jr. for negligent infliction of emotional distress is actionable.
F. Count VII — Intentional Interference with Advantageous Contractual Relations
The plaintiff next seeks to bring a claim for intentional interference with contractual relations against Ernest, Jr. and Helen Smith. “In an action for intentional interference with contractual relations, the plaintiff must prove that: (1) [she] had a contract with a third party; (2) the defendant knowingly induced the third party to break the contract; (3) the defendant’s interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant’s actions.” G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991) citing United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812-17 (1990). These substantive elements constitute the material facts for the purpose of evaluating the entry of summary judgment on Count VIL G.S. Enterprises, Inc., 410 Mass, at 272. Therefore, the defendants have the burden of showing there is no genuine issue as to any of these material facts.
The defendants argue that the plaintiffs claim against Ernest, Jr. and Smith fails as a matter of law because she cannot prove the requisite element of improper motive or means. Specifically, the defendants contend that since they were acting within the scope of their employment responsibilities, they had a qualified privilege to report on the performance of the plaintiff, a co-employee, and cannot be held liable for intentional interference with an employment relationship based on such reporting unless they acted with actual malice toward the employee. Graham v. Liberty Mut Ins. Co., 384 Mass. 659, 663 (1981).
The Court agrees that there is no evidence that Helen Smith intentionally, maliciously and without justification interfered with the plaintiffs employment relationship with Boch. Moreover, the plaintiff states in her memorandum in opposition to defendants’ motion for summary judgment, that she does not press her claim under Count VII against Helen Smith. Accordingly, summary judgment against Helen Smith on Count VII is appropriate.
However, upon review of the summary judgment materials, genuine issues of material fact are in dispute concerning whether Ernest, Jr. intentionally, with improper motive or means, interfered with the plaintiffs employment relationship. As previously stated, “[w]here a party’s state of mind or motive is in issue, summary judgment is disfavored. Pinshaw v. MetropolitanDist. Comm’n., 402 Mass. 687, 695 (1988) and cases cited. Therefore, defendants’ motion for summary judgment against Ernest, Jr. on Count VII is denied.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants’ motion for summary judgment as to Counts I, II, IV, V, VI is DENIED. It is further ORDERED that the defendant’s motion for summary judgment on Count III is ALLOWED. With respect to the defendants’ motion for summary judgment on Count VII, it is DENIED against Ernest Boch, Jr. and ALLOWED against Helen Smith.

Although defendants moved for summary judgment on all counts, they never argued Count VI. Accordingly, summary judgment will be denied on this claim.

With respect to defendants’ motion for summary judgment on Count VII, it is denied against Ernest, Jr. and allowed against Helen Smith,

Nhe MCAD issued amended orders dated March 10, 1992 and May 12, 1992.

In support of their motion, the defendants cite Charland v. Muzt Motors, Inc., 417 Mass. 580 (1994). Charland holds that no independent or alternative claim for employment discrimination may be maintained under G.L.c. 93, §§102 and 103 because G.L.c. 151B provides the exclusive remedy for employment discrimination claims not based on preexisting tort law or constitutional protections. However, this Court views the Charland holding as specific, not extending to G.L.c. 214, §1C.

G.L.c. 93, §102(a) provides:
All persons within the commonwealth, regardless of sex, race, color, creed or national origin, shall have, except as is otherwise provided or permitted by law, the same rights enjoyed by white male citizens, to make and enforce contracts, to inherit, purchase, to lease, sell, hold and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and no other.

G.L.c. 15 IB, §(4) states, “It shall be unlawful practice: [f]or any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five.”