EMILE S. BISHARA *vs.* BROWN, DALTAS & ASSOCIATES, INC. December 19, 1985. *Practice, Civil,* Choice of forum. *Arbitration,* Arbitrable question, Stay of judicial proceedings.

The complaint seeks damages in excess of $2 million on various tort (intentional infliction of emotional distress, false imprisonment, slander, etc.) and contract theories of recovery arising out an employment arrangement for work to be done in Saudi Arabia. The allegations are that the plaintiff signed a contract in September, 1981, with the defendant, to perform

---

engineering services in connection with a Saudi Arabian National Guard (SANG) base housing-construction project; that the contract contemplated the signing of a second contract with a joint venture (ACEC/BDA) between Arabian Consulting Engineering Center and the defendant governing conditions of employment; that, as work progressed, the plaintiff, acting as assistant project manager, saw and documented that the building contractor was violating contract specifications and SANG standards and criteria; that the project manager reported the violations to SANG and that, as a result of these reports, the defendant discharged the project manager and plaintiff without notice and confiscated the violation reports; that the plaintiff filed a complaint against the defendant with the Saudi Arabian Department of Labor; that the defendant then took and unlawfully withheld the plaintiff's indentification card, exposing the plaintiff to arrest at any time, and coerced him into moving into an unclean apartment in Riyadh, where he was kept isolated and without money, transportation, or medical attention; that the defendant's joint venturer, ACEC, repeatedly delayed the hearing of the plaintiff's complaint, while the defendant's employees threatened the plaintiff's life, harassed, insulted, and berated him, and threatened to evict him if he did not withdraw his complaint; that the plaintiff's health deteriorated substantially, necessitating medical care which was denied him; that SANG eventually recognized the significance of the violation allegations and issued a letter authorizing hospital care for the plaintiff but asked him not to disclose the alleged violations "because of the seriousness and sensitivity of the allegations"; that the latter stricture, in the circumstances, made it difficult for the plaintiff to pursue his complaint before an arbitral tribunal (the Disputes Commission of Saudi Arabia) to which, under the second contract, all "dispute[s] or difference[s] arising out of this [a]greement shall be finally determined"; that ACEC, despite the SANG letter, caused the plaintiff not to receive hospital care; that the ACEC attorney, in violation of a prior tentative settlement, appeared at the arbitral hearing and "full-well knowing of [p]laintiff's medical condition, instead started to ridicule, berate, and insult [p]laintiff by calling him a thief, incompetent, attacking his honesty, and threatening to deport [him]"; that, faced with deteriorating health and in fear for his life, the plaintiff agreed to drop his complaint in return for the return of his passport, his identity card (necessary to procure an exit visa), and a plane ticket back to the United States; that these were not given to him by ACEC employees, but were instead delivered directly to authorities at the airport; and that, before his departure, ACEC representatives searched through his luggage removing reports and documents relating to the above incidents.

In response to this complaint, which has not yet been answered, the defendant filed a motion under G.L. c. 251, § 2(a), asking that the action be stayed and the matter remitted for arbitration to the Disputes Commission of Saudi Arabia. The judge denied the motion, and the defendant appealed. See G.L. c. 251, § 18(a) (1); *Hanslin Builders, Inc.* v. *Britt Dev. Corp.*, 15 Mass. App. Ct. 319, 322 (1983).

The plaintiff, citing *J. Dunn & Sons* v. *Paragon House of New England, Inc.*, 110 N.H. 215 (1970), argues that the arbitration clause should be read to cover contractual disputes but not tortious activities of the type alleged in his complaint. It may become necessary to resolve that point before this litigation is completed; but, at this preliminary stage, the judge's action finds ample justification in G.L. c. 251, § 1 (as appearing St. 1960, c. 374, § 1), which makes arbitration agreements "valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract," compare *The Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972), and *Ernest & Norman Hart Bros.* v. *Town Contractors, Inc.*, 18 Mass. App. Ct. 60, 66-67 (1984); and in the principle applied in the *Hanslin Builders* case, *supra*, that a party to an agreement calling for arbitration of dispute may waive his right to arbitration if he does not properly invoke the right in accordance with the statute and the agreement to arbitrate. A fortiori, one who actively thwarts the attempt of the other party to have the dispute resolved by arbitration should be held estopped to invoke the arbitration clause to avoid suit.

It must be emphasized that, at this stage of the litigation, we have only allegations, not findings. We do not interpret the judge's denial of the motion as a final determination that the arbitration proceedings in Saudi Arabia, said to have ended in an affirmative waiver by the plaintiff of all his rights, are of no effect here. Agreements to arbitrate in foreign forums were upheld in *Scherk* v. *Alberto-Culver Co.*, 417 U.S. 506, 519-20 (1974); *International Refugee Organization* v. *Republic S.S. Corp.*, 93 F. Supp. 798 (D. Md. 1950); *Joo Seng Hong Kong Co.* v. *S.S. Unibulkfir*, 493 F. Supp. 35 (S.D.N.Y. 1980). See also *Mittenthal* v. *Mascagni*, 183 Mass. 19, 23-24 (1903). Here, however, the facts surrounding the making of the second contract, its relationship to the first contract, the conduct of the defendants or their partners or agents in connection with the plaintiff's alleged attempts to arbitrate the dispute under the agreement, and the circumstances of the plaintiff's alleged waiver of rights in the course of the Saudi arbitration are all so interwoven with the substance of the plaintiff's tort counts, that trial must be had, and fact found, before the enforceability of the arbitration clause or the effect of the alleged waiver may be determined. *El Hoss Engr. & Transp. Co.* v. *American Independent Oil Co.*, 289 F.2d 346, 351 (2d Cir. 1961). *Danford* v. *Schwabacher*, 342 F. Supp. 65, 69 (N.D. Cal. 1972).

It is true that, under G.L. c. 251, § 15, as appearing in St. 1960, c. 374, § 1, applications for arbitration "shall be by motion and shall be heard in the manner . . . provided by law or rule of court for the making and hearing of motions." Normally motions are decided in our practice without evidentiary hearing and without findings. See Mass.R.Civ.P. 52(a), 365 Mass. 816-817 (1974). In most cases the facts relating to arbitrability will be undisputed, or will present at most a narrow factual difference properly resolvable upon affidavits. Here the question turns on an extended course

of conduct between the parties and alleged partners and agents, the facts of which, we can assume, will be in sharp dispute. It would be speculative at this stage to consider what combinations of facts would permit the plaintiff to avoid the arbitration clause altogether, or his alleged waiver of rights under it. First we must know what happened. The philosophy which underlies the unbroken course of decisions under Mass.R.Civ.P. 12(b) (6), 365 Mass. 755 (1974), is that courts should avoid making abstract legal decisions on facts alleged in pleadings, and reserve decision until the facts are found. *Fabrizio* v. *Quincy,* 9 Mass. App. Ct. 733, 734 (1980). See generally *Charbonnier* v. *Amico,* 367 Mass. 146, 153-154 (1975). This is an appropriate case to apply that principle.

*Order denying motion to stay*
*proceedings affirmed.*

*John P. Ryan* for the defendant.
*Florence E. Freeman* for the plaintiff.