Borenstein, J.

I.INTRODUCTION

The plaintiff, William McBirney, filed an action against the defendant, Jonathon Shearer, to recover the damages he sustained as a result of claims against the defendant for fraud, tortious interference with a contract, and slander. On September 21, 1999 after a two-week trial in which there were numerous witnesses and 21 exhibits admitted in evidence, the jury found for the plaintiff on all claims, awarding him $602,000 dollars for fraud, $245,000 for tortious interference with a contract, and $15,000 for slander, for a total of $862,000, plus interest and costs. After the verdict, the defendant made timely motions for judgment notwithstanding the verdict on each count, or, in the alternative, for a new trial or a remittitur. After considering the arguments of counsel, the motions and memorandum in support, and the credible evidence, the court makes the following findings and rulings of law.

II.BACKGROUND ON DEFENDANT’S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

In order for the court to grant a motion for judgment notwithstanding the verdict, it must find that as a matter of law, based on all the evidence, no reasonable jury could have found Shearer liable on each of the claims. The standard is whether, based on all the evidence, including the reasonable inferences which could be drawn from the evidence, could a rational jury have found as they did. Moose v. Massachusetts Institute of Technology, 43 Mass.App.Ct. 420, 421 (1997). Thus, a Motion for Judgment Notwithstanding the Verdict is granted “when all the evidence is considered most favorably to the plaintiff, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached.” O’Shaughnessy v. Besse, 7 Mass.App.Ct. at 728, 389 N.E.2d at 1051 (citing Simblest v. Maynard, 427 F.2d 1, 4 (2d Cir. 1970)); Posttape Assocs. v. Eastman Kodak Co., 68 F.R.D. 323, 331 (E.D. Pas. 1975), rev’d on other grounds, 537 F.2d 751 (3d Cir. 1976); Rubel v. Hayden, Harding & Buchanan, Inc., 15 Mass.App.Ct. 252, 444 N.E.2d 1306 (1983). For the following reasons, Defendant’s Motions for Judgment Notwithstanding a Verdict are DENIED.
III.Evidence Before the Jury
Viewing the evidence in the light most favorable to the plaintiff, the jury could have reasonably found the following. As of September 1994 when the plaintiff, William McBirney, was fired in a restaurant parking lot, he had been an employee of Paine Furniture, Inc. for 37 years. He worked his way up from stock boy to become a vice president of the company, second in command only to the president and majority shareholder Jonathan Shearer. In September of 1994, Shearer fired McBirney in the parking lot of a restaurant where McBirney thought they were going to have lunch, meet and discuss a number of issues about the company. Shearer gave no reason for the firing to McBirney at the time. Shearer immediately replaced McBirney with a younger woman, Margaret Foley. He then named and promoted her to McBirney’s position as vice president. The evidence shows that Shearer favored Foley among all other employees at Paine. The evidence showed that, at least subsequent to the firing of McBirney, Shearer had an extramarital affair with Foley, all while she remained as vice-president in the plaintiffs prior position. Prior to the parking lot incident, Foley and McBirney had been in a heated argument where McBirney used abusive language and shouted at Foley over the phone. Although McBirney subsequently apologized to Foley, both Shearer and Foley avoided speaking with McBirney and he was fired shortly thereafter. The evidence showed that, prior to McBirney’s firing, and subsequently, the atmosphere at Paine Furniture was one where profanity and vulgarity were frequently used, and where screaming and occasional incidents of throwing or breaking objects took place, with Shearer often engaging in such conduct.
McBirney had a written employment contract with Paine Furniture Company, which Shearer breached at the time of the termination. The contract required written advance notice of no less than 90 days before either side terminated the contract. The contract also stated that McBirney could only be fired “for cause,” as narrowly defined in the contract. The evidence at the trial was clear that Shearer breached the employment contract by failing to give McBirney the required notice and by firing him without cause.
During the parking lot conversation in which Mc-Birney was fired, Shearer told McBirney it was his intention to have Paine continue to pay his salary until he found another job, and to have Paine make up the difference if McBirney got a job that paid less. Shearer also said he intended to have Paine continue to pay his health benefits and acknowledged that Paine owed him an annuity and would provide him with one. After their conversation, McBirney was shocked and saddened by his termination and drove out of the parking lot, but then had to pull his vehicle over because he was so distraught. As Shearer drove by, he observed that McBirney was slumped over his steering wheel, and even though he thought McBirney might have suffered a heart attack, Shearer never stopped. Shearer then went back to the office and laughed about the circumstances of the incident with Foley and other co-workers.
During the course of litigation, McBirney also learned that after the termination Shearer had slan *125 dered him at a furniture market (or trade show) in North Carolina, amongst other things by calling him “burnt out” and a “dead battery.”
In reliance on the promises Shearer made to him in the parking lot, McBirney did not pursue any age or gender discrimination claims against Paine or Shearer. Although McBirney met with a lawyer familiar with these claims, he did not pursue them because he did not believe he could show any economic damages. In addition, McBirney also failed to take steps to address his financial situation, such as selling his condominium or broadening his job search, as a result of relying on Shearer’s promises.
In the fall of 1995, just after the statute of limitations had run for discrimination claims, McBirney received a letter from counsel on behalf of both Paine and Shearer. The letter stated that McBirney’s salary was only to be continued for one year after termination, and thus would be ending shortly. Paine also informed McBirney that it would stop paying his health insurance, despite the fact that McBirney had been unable to obtain another job. McBirney filed for unemployment. He then attempted to better his situation by opening up a business that provided for breakfast and lunch. After he incurred substantial debt trying to make the business successful, he sold it and took another job.
IV. Discussion
“As a Motion for Judgment Notwithstanding the Verdict is technically a revised motion for a directed verdict, no grounds for the Motion for Judgment Notwithstanding the Verdict may be raised which were not asserted in the directed verdict motion.” Bonofiglio v. Commercial Union Ins. Co. 411 Mass. 31 (1991). Shearer failed to raise certain issues in his Motions for Directed Verdict on the fraud count which he now asserts in his Motions for Judgment Notwithstanding the Verdict. These issues are: (1) McBirney could not reasonably rely on representations that he would continue to be paid in light of remarks he made to Margaret Foley. See Defendant's Motion for Judgment: Notwithstanding the Verdict at 4, ¶7. (2) McBirney did not actually rely upon plaintiffs misrepresentations since he was not foreclosed from bringing a discrimination claim against Paine Furniture at the time litigation commenced. Id. at 4-5, ¶7. (3) McBirney failed to prove Shearer’s actual intentions in the parking lot conversations. Id. at 5, ¶8. See also Defendant’s Supplemental Memorandum in Support of the Motion for Judgment Notwithstanding the Verdict on the counts of Fraud and Tortious Interference at 1-2 ¶11. (4) McBirney’s claim is barred by the exclusivity provision of Mass. Gen. Laws ch. 151B. See Defendant’s Supplemental Memorandum in Support of the Motion for Judgment Notwithstanding the Verdict on the counts of Fraud and Tortious Inteference at 2-3, HII. Because Shearer did not raise these issues in his Motions for Directed Verdict on the count of fraud, they may not be raised here on a Motion for Judgment Notwithstanding the Verdict, and those grounds in support of the motion can be deemed as non-meritorious. This court will nevertheless examine all of defendant’s Motions for Judgment Notwithstanding the Verdict on the merits.
A. FRAUD
The defendant herein seeks Judgment Notwithstanding the Verdict on the claim of fraud. In order to prevail on this claim, the plaintiff must prove “that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.” Kilroy v. Barron, 326 Mass. 464, 465 (1950); Danca v. Taunton Savings Bank, 385 Mass. 1, 429 N.E.2d 736 1129, 1133 (1982).
At trial, the plaintiff maintained and was able to prove through the evidence, that Shearer made false representations to McBirney during the parking lot meeting, and upon which McBirney relied to his detriment. The misrepresentations included (1) that Paine had the intention to pay him an amount equivalent to his salary until, if ever, he was able to obtain another job; (2) that Paine had the intention, if Mc-Birney found another job that paid less than what he was earning at Paine, to make up the difference; (3) that Paine had the intention to provide him with the health care benefits comparable to what he was receiving at the time of discharge unless or until he obtained comparable coverage at another job; and (4) that Paine had the intention to provide him with an annuity. In reliance on the false representations by Shearer, Mc-Birney did not pursue a wrongful termination claim against Paine at the time of his termination.
The first requirement to sustain a claim of fraud is that a representation made must be false. Zimmerman v. Kent, 31 Mass.App.Ct. 72, 78 (1991). See Kotler v. American Tobacco Co., 731 F.Supp. 50, 52 (D.Mass. 1990) (failure to show statements were untrue defeats claim of misrepresentation). Here, the false representations were that Paine would provide a continuing salary and benefits to McBirney. The defendant maintained, and it was proved at trial, that during the parking lot conversation he did agree to pay McBirney’s [salary], but only for a year and that he would also pay health insurance premiums “for a period of time.” The defendant denied promising to pay McBirney “forever.” This was an issue of credibility, and based on the evidence before them at this trial, it was entirely reasonable that a jury believed the testimony in support of and evidence presented by Mc-Birney at trial, rather than defendant’s testimony or evidence. Moreover, the falsity of defendant’s statements is also supported by evidence of his discontinuation of payment to plaintiff; specifically, a letter from *126 Paine Furniture Company’s attorneys advising Mc-Birney that he would no longer be paid by Paine.
The next requirement to sustain a claim of fraud is that of “materiality,” which has been defined as whether “a reasonable man would attach importance [to the fact not disclosed] in determining his choice of action in the transaction in question.” Zimmerman v. Kent, 31 Mass.App.Ct.72 (1991), quoting Rogen v. Ilikon Corp., 361 F.2d 260, 266 (1st Cir. 1966). Here, the material fact not disclosed is that Shearer did not intend to provide McBirney with continual payments as alleged by plaintiff but rather, intended to pay him only for a year after termination. A reasonable jury could conclude from all the evidence, that a person in McBirney’s position would have attached importance to the undisclosed facts as they would have affected the course of action he would choose after termination. For example, as testified by McBirney at trial, he may have, among other things, chosen to bring a discrimination suit against Paine, and/or expanded his job search to include a larger geographical area, and/or repositioned his financial situation to better account for loss of salary after one year, and loss of benefits, including selling his condominium.
A statement on which liability for fraud may be based must be one of fact, not of expectation, estimate, opinion, or judgment. Zimmerman v. Kent, 31 Mass.App.Ct. 72, 79 (1991), citing Powell v. Rasmussen, 355 Mass. at 118 (1969). A fact is something “susceptible of knowledge.” Id. at 79, citing Chatham Furnace Co. v. Moffatt, 147 Mass. at 406 (1888); Yorke v. Taylor, 332 Mass. 368, 371 (1955); Acushet Fed. Credit Union v. Roderick, 26 Mass.App.Ct. at 605 (1988).
Here, even though the misrepresentations by Shearer concerning future payments to McBirney appear promissory in nature and thus inactionable, a reasonable jury could have concluded that they were misrepresentations of fact and present intent. As such, they were actionable misrepresentations of fact. “Present intention as to a future act is a fact. It is susceptible of proof. When such intention does not exist, ... it is a misrepresentation of a material fact . . . The statement of fact as to present intention of the defendant, being susceptible of actual knowledge and being a fact alleged to have been false, may be made the foundation of an action of deceit.” Barrett Assocs. v. Aronson, 346 Mass. 150, 152 (1963), quoting Feldman v. Witmark, 254 Mass. 480, 481-82 (1926).
The defendant maintains that “plaintiff offered no evidence from which a reasonable jury could have concluded that. . . Shearer had no intention to carry out the parking lot promises at the time those representations were made.” Defendant’s Motionfor a Judgment Notwithstanding the Verdict: on the count of Fraud at 5, ¶8. In support of this contention, defendant cites Zhang v. Massachusetts Institute of Technology, 46 Mass.App.Ct. 597 (1999). In Zhang, the appellate court states that the intention of a promissor not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its nonperformance. The intention may be shown by other evidence that sufficiently indicates its existence. Id. at 605-06. Defendant maintains that since “the only evidence offered by Plaintiff is that in July 1995, Mr. Shearer caused Paine’s attorneys to write to the plaintiff to say that Paine would cease paying the plaintiff his salary in October 1995, no reasonable jury could conclude that Shearer had a present intention in the parking lot to defraud McBirney.” This court is not persuaded.
While it is true that the letter terminating payment to McBirney is evidence of Shearer’s intention at the time of the parking lot promises, it was not the sole evidence presented. Shearer himself testified at trial that at the time of the parking lot conversation he had no intention of having Paine pay McBirney continuously. Moreover, Paine’s benefits administrator, Judith O’Connell, testified that almost immediately after firing McBirney, Shearer told her to note that Mc-Birney would be paid for one year. From this evidence, at least, a reasonable jury could conclude that Shearer had the intention at the time of the parking lot conversation not to pay McBirney continuously as Mc-Birney claims, and as the jury could have found from the evidence, was represented to him.
Whether defendant induced plaintiff to act was a reasonable conclusion reached by the jury. From the evidence in this case, a reasonable jury could have concluded that Shearer’s purpose in making misrepresentations to McBirney was to induce him to act or not act in a manner that suited Shearer. For example, plaintiff presented believable evidence that he did not pursue a discrimination claim because there might not be damages, based on the promises made to him by Shearer. Moreover, based upon the evidence presented at trial a reasonable jury could have concluded that Shearer wanted McBirney to leave Paine Furniture in September 1994 without conflict. For example, he chose to fire McBirney unceremoniously in a restaurant parking lot, chose not to circulate a memo regarding his termination, or give McBirney the opportunity to resign or otherwise depart in a dignified manner.
The recipient of a fraudulent misrepresentation of fact is justified in relying on its truth as long as his reliance is reasonable. Reliance is reasonable as long as it is not “preposterous or palpably false.” Zimmerman v.Kent 31 Mass.App.Ct. 72(1991).The defendant claims that “as a matter of law, the Court should find that it was unreasonable for the plaintiff to have relied on [Shearer’s] ‘ambiguous’ statement” that Paine would pay the plaintiff until he got another job. See Defendant’s Motion for a Judgment Notwithstanding the Verdict on the Count of Fraud at 3, ¶5. It is supported only by the defendant’s assertion that “no *127 reasonable jury could have found that an employee who admitted that he told a female co-worker that ‘if you were a man, you would be spitting teeth out your asshole’ and was terminated as a result could reasonably believe that his former employer would continue to pay him for another ten years for doing no work for the company.” Id. at 4, ¶5. This court is not persuaded by this argument, and the evidence before the jury does not support it.
In this case, there was more than sufficient evidence that McBirney reasonably relied on Shearer’s misrepresentations. A reasonable jury could have concluded that it was entirely reasonable for the plaintiff to rely on a statement that he, in essence, would be taken care of when viewed in the context of the plaintiffs 37-year relationship with Paine Furniture, and the work atmosphere of that company. It is undisputed that Mr. McBirney devoted his entire work career to Paine Furniture Company. This is borne out by his and others’ testimony, including Shearer’s, of his love of the furniture business, his work ethic and his success within the furniture industry generally and the company specifically. There was evidence he was an extremely important part of the success of the company, including as shown by his position as its highest paid employee. Moreover, when viewed in light of the fact that the plaintiffs hard work and devotion coincided with the existence of a chief executive officer whom the evidence showed to be disinterested and uninvolved, it was entirely reasonable for the plaintiff to rely on the representations made to him for a number of reasons, including that his 37 years of devotion deserved recompense. Furthermore, the evidence clearly showed, and allowed the jury to find that the culture of the company was one in which swearing and abusive behavior was commonplace, including by Shearer. Moreover, the evidence presented at trial was that McBirney’s demeanor had not changed in 37 years. It was not unreasonable for the jury to conclude that McBirney relied upon representations that he would be taken care of.
The defendant also claims that a reasonable jury could not have found that the plaintiff actually relied upon the parking lot promises, because the plaintiff didn’t give up anything. The defendant maintains that since there was “no evidence whatsoever . . . that the plaintiff had a good faith belief that he had a[n] [age] discrimination claim against Paine” and since that was “the only evidence the plaintiff presented on the reliance issue,” there was, in fact, no actual reliance. See Defendant’s Motion Jor a Judgment Notwithstanding the Verdict on the Count of Fraud at 4, §6. This is further supported, the defendant contends, because the plaintiff was not foreclosed from bringing an age discrimination claim. The defendant argues that the statute of limitations had not run by March of 1995, see Defendant’s Motion for a Judgment Notwithstanding the Verdict on the Count of Fraud at 3, ¶5, as asserted by the plaintiff at trial. The defendant argues that the plaintiff still could have brought a discrimination claim at the time he filed suit against Paine and Shearer since the statute would not have begun to run until “after Mr. McBirney was removed from Paine’s payroll in October of 1995" which would have been when the ’’last act of discrimination occurred." Moreover, the defendant argues that the doctrine of equitable tolling would “clearly” have permitted him to bring an age discrimination claim. Id. at 4-5, ¶¶6, 7.
There was more than sufficient evidence at trial that the plaintiff had a good faith belief that he had a valid age discrimination claim against Paine and Shearer. An age discrimination claim involves a three-step process. Initially, the burden is on the claimant to establish a prima facie case of unlawful age discrimination. To do so, the claimant must show that he was discharged while over the age of forty and replaced by ayounger person. See G.L.c. 151B, §1(8). Once this is accomplished the burden then shifts to the defendant who must establish that it had a legitimate nondiscriminatory reason for the discharge. Then, if evidence of a neutral reason, a non-discriminatory one, is presented, the burden shifts back to the claimant to prove the discrimination was on the basis of age and not the reason asserted by the defendant. See Scotti v. Arrow Elecs., Inc., 37 Mass.App.Ct. 954 (1994). Here, the plaintiff clearly met the initial burden of proof as he was 55 at the time of his termination, and he was replaced by a younger, married woman who, as the evidence showed, eventually was romantically involved with Shearer. Moreover, it was reasonable for a jury to have concluded from all the evidence that Shearer’s actual purpose in firing McBirney was to be closer to Margaret Foley, the younger female employee who replaced McBirney. For example, the plaintiff presented evidence that Shearer purchased for and often shared with Foley clothing, jewelry, meals, trips and other expenses, and regularly paid for them with a Paine corporate credit card.
Aside from the evidence that the plaintiff had a good faith belief he had a discrimination claim, foregoing a lawsuit against Paine for discrimination was not the only evidence presented by the plaintiff of detrimental reliance. The plaintiffs testimony was that on advice from friends, he went to speak to an attorney regarding pursuit of an age discrimination claim against Paine. Mr. Thomas Moriarty, an attorney with whom Mc-Birney spoke regarding this claim, advised him against pursuing it, not because it was invalid, but rather, since Shearer promised him employment until he obtained another job, he probably would recover no damages. In fact, Attorney Moriarty testified that based upon his discussion with McBirney, there was reason to believe there was a valid claim. Additionally, the plaintiff testified that he gave up broadening his job search and selling his home, among other things, as a result of the defendant’s fraudulent promises.
*128 Although it is possible a court may have found that the last act of discrimination was the letter from Paine’s attorney discontinuing payment to McBirney after a year, which would have allowed him to bring suit six months hence, and further may have found that the doctrine of equitable tolling applied, there was no guarantee of this occurring. To conclude that Mc-Birney did not give up something since a court might have made these findings would be without merit.
The defendant further maintains that since the plaintiffs employment contract was found by an arbitrator[1] to be in force at the time the parking lot promises were made, his fraud claim as to those promises should be barred as impermissible oral modifications of a fully integrated written contract. See Defendant's Motion for a Judgment Notwithstanding a Verdict on the Count of Fraud at 1-4, ¶¶1-4.
At the beginning of trial, the plaintiff asserted two separate sets of misrepresentations to support their fraud claim: (1) representations made during the course of plaintiffs employment (hereinafter “pre-termination promises”), and (2) representations made contemporaneous with the plaintiffs termination by Mr. Shearer (hereinafter “parking lot promises”). The defendant maintains that during the course of trial, the plaintiff abandoned the portion of the fraud claim based upon the pre-termination promises as barred by the written employment contract which did not permit oral modification. The reasoning is, since there was a written employment contract which did not permit oral modification, any representations made prior to the termination of the contract, as to the subject matter of the employment contract, to wit, the employment relationship between McBirney and Paine Furniture, would be impermissible oral modifications which are to be given no effect, and would be inadmissible at trial. The defendant argues that at the arbitration a finding was made that the employment contract between Paine and Mc-Birney was still in force at the time of the parking lot promise, thus the representations made there by Shearer must also be barred as invalid oral modifications of the employment contract.
The defendant’s argument is flawed. The two separate sets of misrepresentations initially put forth to support the fraud claim are easily distinguishable based on the evidence at trial. The most obvious distinction is the period of time in which each of these separate representations took place. The first set took place prior to the parking lot incident, before the contract was breached, whereas the second set took place after the breach, in the parking lot, when Shearer fired McBirney and terminated the contract. This is of particular significance when considered in relation to the issue of oral modification of the written employment contract. While it is true that the contract was in force at the time the parking lot promises were made, it was also at that time that McBirney was fired, and the contract was terminated and breached. The breach ended the contractual relationship between the plaintiff and Paine Furniture. Once the contract was breached and terminated, the issue of oral modification became irrelevant. Since at the time they were made the contract between McBirney and Paine had been breached and terminated, the subsequent oral misrepresentations and fraudulent promises made by Shearer in the parking lot were not oral modifications of a written contract. Indeed, the evidence was ample that after breaching, and thus terminating the contract Shearer made fraudulent misrepresentations to McBirney, that the latter reasonably relied on them, and suffered significant damages as a direct result.
B. SLANDER
The defendant seeks a Judgment Notwithstanding the Verdict on the claim of slander. “Slander consists of the publication of defamatory matter by spoken words, transitory gestures or by any form of communication ...” Restatement, Second, Torts §568. To establish a claim of slander the following elements must be met. First, the statements must hold the plaintiff up to scorn, hatred, ridicule or contempt in the minds of a considerable and respectable segment of the community. Tartaglia v. Townsend, 19 Mass.App.Ct. 693, 696, 477 N.E.2d 178 (1985). Second, the statements must have been made to at least one other individual other then the one defamed. Brauer v. Globe Newspaper Co., 351 Mass. 53, 56, 217 N.E.2d 736 (1966). Third, the defamatory statements must be false. Lastly, the plaintiff must claim that he suffered special, damages, and must set forth these damages specifically. Lynch v. Lyons, 303 Mass. 116, 119, 20 N.E.2d 953 (1937). An action for slander may be maintained without proof of special damages if the statements are actionable per se, to wit, the statements prejudiced the individual who is the subject of the slanderous statement(s) “in [their] office, profession or business or may probably tend to do so.” Id. at 119.
At trial, the plaintiff maintained that the defendant made defamatory statements to furniture industry members and others in 1994 at an annual spring trade show in North Carolina. The purported defamatory statements were that McBirney was “burnt out,” “defeated,” and that “he no longer had the capacity to work at Paine.”
The jury was warranted in concluding, based on all the evidence, that these were false statements, made by Shearer at a trade show in North Carolina, and held McBirney up to “scorn, hatred, ridicule or contempt” among the furniture “community.” In reaching its determination, a jury should examine allegedly defamatory statements “in the context in which they were uttered or published [and] must be consider[ed] [in light of] all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.” Myers v. Boston Magazine Co., 380 Mass. 336, 341-42. Here, the statements by Shearer were made while acting in his official capacity as presi *129 dent/owner of Paine Furniture Company, at a major furniture industry event, to members of the furniture industry; an industry in which McBirney had worked his entire professional life. These statements, a jury could find, suggest that McBirney was no longer mentally or physically capable of working productively in the furniture industry. When considered in light of the audience and setting in which they were made, such statements may reasonably be construed as holding McBirney up to scorn, hatred, ridicule or contempt within the furniture business community.
The defendant also maintains that the statements attributed to McBirney were nonactionable statements of opinion. “A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.” Prosser on Torts, 2d §566. Here, Shearer, as owner/president of Paine Furniture was the only person to hold a supervisory position with regard to McBirney. As such, statements made while acting in his position as president of Paine as to the capacities of McBirney are not merely expressions of opinion but rather evaluative pronouncements. It was reasonable for a jury to conclude that those members of the furniture industry to whom Shearer published his remarks understood those statements to mean that he had observed conduct of McBirney that justified the critical depiction of him. Thus, a reasonable jury could have concluded that Shearer’s statements were false assertions of fact.
The second requirement, that statements be published by the defendant to other individuals, is undisputed. Shearer admitted in his deposition in preparation for trial, and during his testimony at trial, that he made the alleged defamatory statements to other persons attending the 1994 furniture market in North Carolina, and who worked in the industry.
The falsity of Shearer’s statements was also proved through Shearer’s own deposition testimony, as well as his testimony at trial. Shearer admitted that he believed McBirney would get a job very shortly in the furniture industry. This testimony contradicts any claim that McBirney was “burnt out,” “defeated” and “no longer had the capacity to work at Paine” and is evidence, which together with other evidence, was more then sufficient to allow the jury to find that Shearer knew at the time these statements were made that they were untrue. A reasonable jury could have found that Shearer knew of the falsity of his statements at the time they were made.
Although generally a plaintiff must plead that he suffered special damages in a slander action, and must set forth these damages specifically, there is an exception to the general rule which applies in this case, supra, 303 Mass. 116, 119 (1937). The plaintiff may prevail on an action for slander without proof of special damages if the untrue statements are actionable per se. A statement is actionable per se where it prejudiced] the individual “in [their] office, profession or business or may probably tend to do so.” Id. at 116, 119. Here, the statements made by Shearer impute characteristics which are incompatible with McBirneys successful performance of his job at Paine specifically, and within the furniture industry generally. Thus, it was reasonable for a jury to have concluded that such statements were actionable per se, as they tended to prejudice McBirney within his profession. As such, McBirney was not required to plead and prove special damages.
C. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
The defendant seeks Judgment Notwithstanding the Verdict on Tortious Interference with Contractual Relations. A defendant can be found liable for tortious interference with contractual relations if the juiy finds that 1) the plaintiff had a contract with a third party, 2) the defendant intentionally induced the third party to breach the contract, 3) the defendant’s interference, in addition to being intentional, was made with actual malice, improper in motive or means, and 4) the plaintiff suffered harm as a result of the defendant’s actions. Shea v. Emmanuel College, 425 Mass. 761, 764 (1997). “The improper motive or means required is ‘actual malice’ ” which is a “spiteful, malignant purpose, unrelated to the legitimate corporate interest.” Id. It was undisputed at trial that McBirney had a contract with Paine Furniture Company, at least until the parking lot incident. This contract was breached at the time Shearer terminated McBirney in the parking lot.
Despite the defendant’s arguments to the contrary, I have found as a matter of law that Shearer and Paine Furniture were separate legal entities. This Court is not persuaded by the argument that Shearer, as CEO and 65% shareholder, is so closely identified with Paine Furniture and its policies that McBirney’s contract with Paine was essentially a contract with Shearer. The case repeatedly cited by the defendant only mentions this issue in dicta and otherwise declines to consider this argument:
Conceivably, one in the position of chief executive officer . . . might be so closely identified with the corporation itself, and with its policies, that he should not be treated as a third person in relation to corporate contracts, susceptible to charges of tortious interference with a contract when he causes the corporation to breach its contractual obligations. The point is not argued, however, and should not be considered in any event on the bare allegations of the complaint. Compare Bishara v. Brown, Daltas & Assocs, 21 Mass.App.Ct. 941, 943-44, 486 N.E.2d 761 (1985). Schinkel v. Maxi-Holding Inc. 30 Mass.App.Ct. 41, 50 (1991).
A similar argument was rejected by the U.S. District Court in Boyle v. Boston Foundation, Inc., 788 F.Sup. 627, 631 (1992). The defendant employer in that case, like Shearer in the instant case, tried to use the same excerpt of dicta in Schinkel to argue that a claim of intentional *130 interference with a contract brought by an employee who had been wrongfully terminated should be dismissed:
While the problem discussed in the Schinkel case is certainly of interest, the Court’s language cannot support a motion to dismiss, especially since the Massachusetts Appeals Court itself had earlier held that an officer of a corporation may be liable for interfering with an employment contract between an employee and the corporation. Steranko v. Inforex, 5 Mass.App.253, 272-3, 362 N.E.2d 222, 235-6 (1977). In these circumstances, dismissal is not warranted. Boyle v. Boston Foundation, Inc. and Anna Faith Jones, 788 F.Sup. 627, 631 (1992).
The court in this case agrees with plaintiffs argument that case law supports treating Shearer as a separate legal entity from Paine Furniture. Although this separation may only appear to be the result of what has been termed a legal “fiction,” it is ironically a “fiction” that Mr. Shearer maintains when it may work to his advantage. He cannot discard it now in hopes of insulating himself from the consequences of his actions. Mr. Shearer has enjoyed all the protections and benefits of being the President and CEO of a company that is a distinct and separate legal entity. For example, if Paine Furniture were to declare bankruptcy, Mr. Shearer’s personal assets could not be touched. The Massachusetts Supreme Judicial Court has held: “Corporations may not assume the benefits of the corporate form and then disavow that form when it is to their stockholders’ advantage.” Berger v. H.P. Hood, Inc., 416 Mass. 652, 658 (1993) (quoting Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 626 (1990)). Moreover, the SJC noted in 1990 that no Massachusetts decision of which it was aware allowed a defendant corporation to pierce its own corporate veil. Gurry, 406 Mass. at 626 n.7. This is not a situation of a sham corporation where the court has found an equitable reason to pierce the corporate veil.
The jury found that Shearer intentionally and wrongfully interfered with the contract McBirney had with Paine Furniture. They did not, and could not, find him liable for breaching his own contract with McBirney, because he did not have his own contract with McBirney. The interference the tort requires is satisfied by Shearer’s act of breaching the contract when he fired McBirney, and doing so with actual malice. Keeton, W. Page, Prosser and Keeton on Torts 129, p. 979 (5th ed. 1984) (interference does not necessarily require falsehood or independent tort). “One who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract is subject to liability . . .” Restatement (Second) of Torts, 766 (emphasis added).
Based on the evidence before it, the jury was warranted in finding that Shearer acted wrongfully, with actual malice, for an improper motive or motives, and intentionally when he interfered with McBirney’s contract with Paine. If an employer with a privilege to terminate an employee does so, the interference must be unrelated to any legitimate corporate purpose. Even if both an improper and legitimate purpose are found, as long as the improper purpose was the primary motivation for the termination, an action can be maintained. United Truck Leasing Corp. v. Ronald D. Geltman, 406 Mass. 811 (1990).
The jury was further instructed to consider the following factors when considering improper motive: 1) the nature of Shearer’s conduct, 2) Shearer’s motives, 3) the interests which were interfered with by the intentional conduct, 4) Shearer’s interests in engaging in the conduct, 5) the social interests in protecting the freedom of action of Shearer’s and McBirney’s contractual interests with Paine, 6) the proximity or remoteness of Shearer’s conduct to the interference with the contractual relations, and 7) the relation between all of the parties.
McBirney was able to show the jury, with evidence, many instances of Shearer’s conduct from which actual malice could have reasonably been found; the abrupt manner in which McBirney was fired in a parking lot after thirty-seven years, the fact that Shearer drove past him although he saw McBirney slumped over the wheel of his car; and the manner in which Shearer laughingly described the termination to co-workers when he returned to the office, together with all the other evidence, allowed the jury to find facts to support their verdict on this claim.
The jury was further instructed that it could infer actual malice if it found that Shearer slandered Mc-Birney at the furniture market after McBirney was fired. Case law also supports a finding of actual malice if the jury determines Shearer fired McBirney for discriminatory reasons, such as age discrimination. Id.
In conclusion, considering the evidence in the light most favorable to the plaintiff, the jury was warranted in finding that McBirney had a contract with Paine Furniture Company, that Shearer with actual malice, intentionally and wrongfully interfered with that contract by firing McBirney without notice and without cause, and that McBirney was harmed as a result of that interference.

ORDER

For all the above cited reasons, the court finds in favor of the plaintiff on all of defendant’s motions for judgment notwithstanding the verdict.
Accordingly, it is hereby ORDERED that all of defendant’s motions for judgment notwithstanding the verdict are DENIED.

At an arbitration proceeding prior to this trial, Paine Furniture Company was found to have breached its contract with McBirney by firing him without the required notice or cause.